797 So.2d 339 (2001)
Robert LUCKETT, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01716-COA.
Court of Appeals of Mississippi.
April 10, 2001.
*342 Richard Flood, Ridgeland, Attorney for Appellant.
Office of the Attorney General by John R. Henry Jr., Jackson, Attorney for Appellee.
En Banc.
SOUTHWICK, P.J., for the Court:
¶ 1. Robert Luckett was convicted of possession of cocaine while also in possession of a firearm. On appeal he alleges seven trial errors: (1) the verdict was against the overwhelming weight of the evidence; (2) his motion to suppress, (3) motion to dismiss, and (4) motion for a continuance should have been granted; (5) his oral confession should have been suppressed; (6) the sentence was excessive and illegal; and (7) the trial judge should have recused himself. We find no reversible error and affirm.

FACTS
¶ 2. On the morning of February 9, 1999, a confidential informant notified the narcotics division of the Canton Police Department that he had seen a large amount of crack cocaine at Robert Luckett's residence. Officer Tucker received the call. He had dealt with this informant on many prior occasions and had found his information reliable in the past. Tucker also had been conducting surveillance on Luckett's house for approximately two weeks before receiving the informant's tip. During that two week period, Tucker observed known drug dealers and addicts coming and going from Luckett's house and the yard about it. Based on the information provided by the informant, Tucker's prior knowledge of Luckett, and the surveillance that was conducted, a search warrant was issued for Luckett's residence.
¶ 3. Tucker, his supervisor and four other officers arrived at Luckett's house late in the evening on February 9, 1999. Once all of the officers were in their positions around the perimeter of the house, Officer Burse knocked on the front door and announced that it was the Canton Police Department and that they were there pursuant to a search warrant. After receiving no response from inside the residence, the officers forced their entry through the front door of the residence. Officer Burse testified that once inside the house that Luckett was observed moving into the living room from the bedroom of the house. Burse drew his weapon and instructed *343 Luckett to have a seat on the couch in the living room. Burse noticed a .38 caliber weapon on the couch beside Luckett. He asked Luckett why he had the firearm. Luckett responded that he had previously been robbed.
¶ 4. Shortly thereafter the remainder of the officers entered the residence. Luckett was once again informed of the reason for their presence, and then thereafter the search continued. Luckett then informed the officers that he was diabetic and that he needed to take his insulin shot. Several officers escorted Luckett to the kitchen where he gave himself a shot but then passed out on the floor. The fall caused the cap which Luckett was wearing to fall off his head spilling several rocks of what appeared to be crack cocaine onto the floor.
¶ 5. While Luckett was being attended, the search through the rest of the residence continued. The officers discovered that there was a fire burning in the fireplace in Luckett's bedroom. The officers extinguished the fire and retrieved a small brown pill bottle from the fireplace. An analysis by the Mississippi Crime Laboratory later identified the substances found in the bottle as crack cocaine. Luckett was taken into custody and the handgun, the crack cocaine, the cap and a knife found at the scene were all taken as evidence. The sum of $177 was also seized from Luckett.
¶ 6. Luckett testified at his trial. He claimed that the cap, the pistol and the crack cocaine did not belong to him. As a diabetic, he was suffering from high blood sugar when the officers entered his residence and at trial could not remember any of the events of February 9, 1999 other than the initial knock at the door. He was convicted of possession of cocaine while also possessing a firearm.

DISCUSSION

I. Weight and Sufficiency of the Evidence
¶ 7. Luckett argues that a directed verdict should have been granted in his favor. In the alternative, he seeks a new trial. We will consider each argument in turn.
¶ 8. Luckett moved for a directed verdict at the close of the State's case and submitted a directed verdict jury instruction at the end of the trial. Both the jury instruction and the directed verdict motion were denied by the trial court. "Requests for a directed verdict and motions for JNOV implicate the sufficiency of the evidence." Franklin v. State, 676 So.2d 287, 288 (Miss.1996). Reviewing the denial of these requests requires that we consider all of the evidence in the light consistent with the verdict. All reasonable inferences supporting the verdict will be made. Only if "the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty" will we reverse on this basis. McFee v. State, 511 So.2d 130, 133-34 (Miss.1987).
¶ 9. The State had to prove the elements provided by Miss.Code Ann. § 41-29-139(c) and § 41-29-152 (Supp. 2000). Those sections require (1) that the defendant knowingly or intentionally possessed a controlled substance, and (2) that the defendant was in possession of a firearm, either at the time the offense was committed or at the time the arrest was made.
¶ 10. Numerous law enforcement officers who were involved in the arrest testified that cocaine was recovered both from the cap that came off Luckett's head and from the fireplace in his bedroom. The analysis by the Mississippi Crime Laboratory *344 revealed that the substances recovered were in fact cocaine. Officer Burse testified that the firearm was discovered on the couch beside Luckett shortly after the officers made their forced entry into the house. Burse also testified that when he asked Luckett why he had the gun that he replied that the reason he had the gun was because he had been robbed before. The State's evidence, when considered in light of the applicable standard, was not insufficient to allow a reasonable juror to consider the guilt of the defendant.
¶ 11. Without belaboring the point, we also find that the decided weight of the evidence favors the verdict. There was no defect in the State's case that would have justified the granting of a new trial.

II. Motion to Suppress
¶ 12. Luckett contends that the search warrant issued by the magistrate was invalid because probable cause was not shown prior to its issuance. Therefore, he contends that the seizure of the cocaine, the cap and the firearm should have suppressed. Luckett argues first that the "facts and circumstances" sheet was not sufficient to create probable cause for the magistrate to issue the search warrant. Next he alleges that the oral supplementation of the information sheet in order to mention the surveillance almost certainly did not occur. The officer explicitly stated that he informed the issuing judge of the surveillance. Luckett considers this testimony incredible because the officer also stated that the judge who issued the warrant believed that what was in the written statement was sufficient to show probable cause without the surveillance information.
¶ 13. What credit to give to a witness's statement, including what should be considered incredible, is for the fact-finder at trial. We find no basis to reject the testimony of the officer. Moreover, the supreme court has held that if the written statement supporting a search warrant request was not entered as an exhibit or made part of the official record for review, the legal issue of its sufficiency to prove probable cause is waived. Branch v. State, 347 So.2d 957, 958-59 (Miss.1977); see also McKinney v. State, 724 So.2d 928, 932 (Miss.Ct.App.1998). This statement is not in our record. We find no error in the denial of the motion to suppress.

III. Excessive fines and double jeopardy
¶ 14. On the date of Luckett's arrest for possession of cocaine while in possession of a firearm, the police seized $177 from him. Approximately two months later Luckett was arrested again and $409 was seized. Luckett argues that the forfeiture constituted an excessive fine and that the trial court should have granted his motion to dismiss based on double jeopardy. The trial judge held that the $409 was not to be considered in determining whether or not an excessive fine was imposed because it did not occur out of the same arrest as the seizure of the $177.
¶ 15. The Mississippi Supreme Court has examined the excessive fine issue in a similar factual context. One (1) Charter Arms v. State, 721 So.2d 620 (Miss.1998). In order to determine if the forfeiture of a vehicle constituted an excessive fine the court adopted the following test:
(1) The nexus between the offense and the property and the extent of the property's role in the offense;
(2) The role and culpability of the owner;
(3) The possibility of separating the offending property from the remainder;

*345 (4) Whether, after a review of all relevant facts, the forfeiture divests the owner of property which has a value that is grossly disproportionate to the culpability of the owner.
One (1) Charter Arms, 721 So.2d at 624-625.
¶ 16. Forfeiture is a statutory procedure. The relevant section provides: "(a) The following are subject to forfeiture:... (5) All money, deadly weapons, books, records, and research products and materials... which are used, or intended for use in violation of this article...." Miss. Code Ann. § 41-29-153(a)(5) (Rev.1993). The substances that fell from Luckett's hat and that were found burning in the fireplace were positively identified as crack cocaine. To find a close nexus between the $177 and the illegal activity is reasonable. Luckett's role and culpability in the crime, and the impossibility of separating any part of the $177 from the criminal activity are all well-proven.
¶ 17. Likewise it cannot be said that the forfeiture was grossly disproportionate to the offense charged. One measure would be the fine that could be imposed for the crime. The applicable statute permits up to a fifty thousand dollar fine. Miss.Code Ann. § 41-29-139(c)(1)(B) (Supp.2000).
¶ 18. Luckett also alleges that since the $177 was forfeited his conviction violated double jeopardy. The Mississippi Supreme Court has stated that forfeitures authorized by these statutes are civil in nature and do not prohibit a subsequent criminal prosecution for the underlying offense. State v. Fleming, 726 So.2d 113, 115 (Miss.1998). An accused cannot succeed with a double jeopardy issue at one criminal trial unless that accused has already been subjected to a criminal trial arising from the same offense. Id. This was the first criminal proceeding on these events.

IV. Continuance
¶ 19. Luckett originally presented an issue regarding a denied continuance motion. His attorney has now conceded that the record does not support the allegation of error.

V. Defendant's Oral Confession
¶ 20. Luckett next asserts that his statement to Officer Burse concerning the handgun should have been suppressed by the trial court. There was testimony that when Officer Burse noticed the weapon beside Luckett on the couch, he asked him what he was doing with a weapon. Luckett replied "that he had been robbed before." Luckett claims that he is entitled to a new trial because this statement was a surprise confession made while in custody of the Canton Police and that he had not been advised of his relevant constitutional rights prior to the time that he made the statement.
¶ 21. In order to permit a suspect in custody to make a knowing and intelligent waiver of rights during interrogation, an explanation of those rights must first be given. Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). By definition, that rule is inapplicable if there either is not interrogation or not custody. Where the interrogation is part of the "general on the scene investigation," Miranda warnings are not a prerequisite to the admissibility of defendant's statements. Tolbert v. State, 511 So.2d 1368, 1375 (Miss.1987).
¶ 22. The trial court found that Luckett's statement was not made while in custody, and therefore, there was no need for Miranda warnings. The officers were serving a search warrant and were still *346 securing the scene at the time that the statement was made. The cocaine had not yet been found, and thus there was as yet no basis on which to arrest Luckett. At this stage, even if weapons were drawn and Luckett was told to stay on the sofa, that is insufficient to constitute custody for purposes of Miranda. Law enforcement officers may temporarily secure a scene while a brief investigation is underway. Under some definitions this could be called "custody," but it is not custody for purposes of Miranda v. Arizona. Porter v. State, 616 So.2d 899, 907-08 (Miss.1993).
¶ 23. The concurring opinion's incredulity on this point focuses on a less than completely logical aspect of custodial interrogation law, but it is not for this Court to rewrite the precedents. Temporary interferences with freedom occur in a wide range of law enforcement situations, from a highway patrolman stopping a motor vehicle on the open road, to Terry v. Ohio stops on the sidewalks, to other encounters between police and private individuals. Every such stop does not require the giving of the warnings of constitutional rights applicable to self-incrimination. "Custodial interrogation" for purposes of the Fifth Amendment has required more than the kind of temporary interference with liberty that the preliminary stages of much police conduct entails.
¶ 24. There is a separate reason why the statement was properly admitted into evidence. The officer ordered Luckett to stay on the couch, and then noticed the gun lying next to him. Making some inquiry about the gun is a necessary, indeed inevitable reaction by the officer. Though the facts are distinguishable, we find the following instructive regarding the need for law enforcement officers to seek clarification about weapons:
We decline to place officers ... in the untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the Miranda warnings and render whatever probative evidence they uncover inadmissible, or for them to give the warnings in order to preserve the admissibility of evidence they might uncover but possibly damage or destroy their ability to obtain that evidence and neutralize the volatile situation confronting them.
New York v. Quarles, 467 U.S. 649, 657-58, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984); WAYNE R. LAFAVE, JEROLD H. ISRAEL, & NANCY J. KING, CRIMINAL PROCEDURE § 6.7(B) (2d ed.1999).
¶ 25. The concurring opinion takes the Court to task for merely noting that our facts are distinguishable from Quarles. It might also be said that the concurring opinion presents no case in which the facts are indistinguishable from our own. Both opinions in the present case are attempting to discern the best possible understanding of various precedents that are not factually identical to our own. The principle underling Quarles is expressed in the quotation just given of it. That principle applies here.
¶ 26. As part of the initial securing of the scene and upon first seeing a weapon next to someone for whom there is as yet no basis to arrest, an officer may ask a natural question that the discovery evokes. In these circumstances, "the question is whether an objective observer would infer the remarks were designed to elicit an incriminating response." WAYNE R. LAFAVE, JEROLD H. ISRAEL, & NANCY J. KING, CRIMINAL PROCEDURE 546 § 6.7(B) (2d ed.1999), interpreting the requirements of Rhode Island v. Innis, 446 U.S. 291, 301-302, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). We find nothing in the evidence to suggest that the officer who asked the question *347 was seeking to have Luckett incriminate himself by asserting ownership to the gun.
¶ 27. That the officer thought to elicit an incriminating answer immediately upon seeing the weapon may presume too much cunning on his part; that an officer must carefully tailor his inquiries at that initial stage of discovery of a weapon assuredly presents too cumbersome a rule.
¶ 28. Officer Burse asked a natural question during his effort to secure the room. The answer incriminated Luckett. It was admissible.

VI. Validity of Sentence
¶ 29. Luckett next contends that the sixteen year sentence imposed upon him by the trial court was excessive. At the time of sentencing he was sixty years old, a diabetic, and had no prior felonies.
¶ 30. A trial judge's decision on sentencing will generally not be disturbed on appeal as long as the sentence is within the range allowed by statute. Davis v. State, 724 So.2d 342, 344 (Miss. 1998). "Sentencing is purely a matter of trial court discretion so long as the sentence imposed lies within the statutory limits." Taylor v. State, 741 So.2d 960, 962 (Miss.Ct.App.1999).
¶ 31. The range of sentence for this crime was from two to eight years and a fine of fifty thousand dollars. Miss.Code Ann. § 41-29-139(c)(1)(B) (Rev.1993). That sentence could be as much as doubled when a defendant was found to be in possession of a firearm. Miss.Code Ann. § 41-29-152 (Rev.1993). Thus Luckett received the statutory maximum for the crime. That was permissible.
¶ 32. Luckett also argues that the trial judge was confused about his options in sentencing Luckett to sixteen years. Luckett highlights a statement made by the judge during sentencing:
"This court views that activity in a very dim light. I have no alternative but to sentence you in a very harsh manner...." Luckett argues that the "no alternative" phrase proves that the court believed the doubled sentence was mandatory. The doubled sentence is in fact optional. Miss. Code Ann. § 41-29-152 (Rev.1993). We disagree, however, that the trial judge's phrasing reveals confusion. At another point, the judge stated that the statute "allows a double penalty for possession of a firearm while in possession of cocaine, which puts the range of the case to sixteen years." The judge understood that sixteen years was the peak of the range and not required. The reasonable interpretation of the trial court's language is that Luckett's actions left him no alternative, not that the statute left him none.
¶ 33. Luckett also contends that the sentence was excessive under White v. State, 742 So.2d 1126 (Miss.1999). There the supreme court reviewed a sentence of sixty years for the sale of a controlled substance within 1,500 feet of a church. The court found the sentence needed to be reviewed again by the trial judge as potentially excessive and cruel and unusual punishment for a first time offender. Id. at 1138. The court restated the general rule that a sentence which does not exceed the maximum penalty allowed by statute should not be disturbed on appeal, but added that if a sentence is classified as "grossly disproportionate" to the charge that it may be attacked as cruel and unusual under the Eighth Amendment. Id. at 1135. A proportionality analysis is applied when a comparison of the crime committed to the sentence given leads to an inference of "gross disproportionality." Id.; Stromas v. State, 618 So.2d 116, 123 (Miss.1993).
*348 ¶ 34. We do not find the exceptional circumstances of White to be replicated here. Instead, the normal rule applies that a sentence within the statutory guidelines is valid. Stromas v. State, 618 So.2d 116, 123 (Miss.1993). We find that the trial court considered its discretion before sentencing Luckett and determined that the maximum sentence was necessary. We find no error.

VII. Trial Judge's Refusal to Recuse
¶ 35. The trial judge, John Kitchens, was serving as district attorney when Luckett was earlier indicted for a separate offense in Madison County. Luckett contends that because of Judge Kitchen's previous involvement, that he lacked impartiality and should not have been the judge to issue the search warrant. There is no separate argument made that Kitchens should have recused himself from presiding over Luckett's trial.
¶ 36. The analysis begins with Canon 3C(1) of the Code of Judicial Conduct. It requires disqualification of a judge under the following conditions:
(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; [or]
(b) he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it....
¶ 37. An objective test is used to determine if a judge should have recused himself. "If a reasonable person, knowing all of the circumstances, would doubt the judge's impartiality, the judge is required to recuse him or herself from the case." Rutland v. Pridgen, 493 So.2d 952, 954 (Miss.1986). The supreme court has held that a judge should recuse himself from hearing a case based on an indictment issued when he was the prosecutor. Jenkins v. State, 570 So.2d 1191, 1192-93 (Miss.1990); Banana v. State, 638 So.2d 1329, 1330-31 (Miss.1994). We find no justification for a similar per se disqualification rule whenever a search warrant is being considered because the judge was the district attorney for a totally unrelated indictment. The evidence is that Judge Kitchens relied solely on the report and statements of the police officers in his decision to issue the search warrant. Judge Richardson, who presided over the motion to dismiss hearing, stated that "any magistrate would have issued the warrant based on the probable cause that I heard."
¶ 38. Luckett failed to overcome the presumption that the trial judge was unbiased.
¶ 39. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF POSSESSION OF COCAINE WHILE ALSO IN POSSESSION OF A FIREARM AND SENTENCE OF SIXTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ARE AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
McMILLIN, C.J., THOMAS, AND MYERS, JJ., CONCUR; KING, P.J., IRVING AND CHANDLER, JJ., CONCUR IN RESULT ONLY.
LEE, J., CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY PAYNE, BRIDGES, AND CHANDLER, JJ.
*349 LEE, J., CONCURRING:
¶ 40. I concur with the result reached by the majority relative to the affirmation of Luckett's conviction; however, I disagree with the analysis that was applied by the majority regarding issue five. I find the majority's application of the law in this instance to be erroneous. The majority concludes that the statement made by Luckett was non-custodial and the result of a "general on-the-scene investigation", or in the alternative, is a custodial interrogation but is admissible because it fits within the narrow "public safety" exception and was a natural question asked by an officer in an effort to secure a room. I submit that neither approach is applicable, and that indeed, Luckett was subject to custodial interrogation and was entitled to a reading of his Miranda rights.
¶ 41. The record reveals that this was not an unexpected situation which the Canton Police Department was called upon to immediately diffuse. To the contrary, the narcotic's division of the Canton Police Department had been conducting a surveillance of Luckett's house for approximately two weeks prior to obtaining a search warrant for his residence. Luckett was no stranger to the Canton Police Department since they had previously arrested him and knew he was a convicted felon. Additionally, Officer Tucker testified at Luckett's trial that six officers were present to serve a warrant on Luckett's residence. Furthermore, Officer Tucker explained that the execution of the search warrant involved a front and rear door entry of the house "[t]o insure that no evidence or persons involved in the warrant would escape the residence." A question was also posed to Officer Burse during his voir dire which occurred outside the presence of the jury concerning the issue of custody. The question was regarding whether Luckett was in custody at the time Officer Burse questioned Luckett regarding the firearm. Officer Burse was asked:
Q: But is it free to say he was in your custody at that point?
A: Yes, he was in our custody at that point.
Under these circumstances it is incredulous to think that Luckett was free to move about as he chose or to leave if he desired.
¶ 42. In Roberts v. State, 301 So.2d 859, 862 (Miss.1974), the issue of custodial interrogation was addressed by the Mississippi Supreme Court, wherein they stated:
This is not to say that menacing police interrogation, of the type condemned by the court in Miranda, cannot occur outside the confines of the station house. In Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), four police officers went to the room of Orozco and found him asleep in bed. The officers questioned Orozco who remained in the bed, admitted ownership of a pistol that had been used in a murder and told the officers where the pistol was located. The officers testified that, although Orozco was in his own bed when interrogated, he was not free to go where he wished but was under arrest when the interrogation was initiated. The Court held that under these facts the use by the state of Orozco's admissions violated his right against self-incrimination as construed in Miranda. The Court reaffirmed the absolute necessity for officers interrogating persons in custody to give the required warnings and concluded that since Orozco was not free to leave, the Miranda warnings should have been given despite the fact that he was interrogated in his own room.
I find Roberts, and its citation of Orozco persuasive in concluding that Luckett was in custody.
*350 ¶ 43. The majority states that "[l]aw enforcement officers may temporarily secure a scene while a brief investigation is underway" and this is not "custody" for Miranda purposes. (citing Porter v. State, 616 So.2d 899, 907-08 (Miss.1993)). I concede that on-the-scene investigations are non-custodial and merely investigatory in nature. Id. at 907. Thus was the situation in Porter, where officers responded to a call about an abandoned baby. Id. at 903.
¶ 44. While conducting the investigation, Debbie Porter, the defendant, was questioned by officers. Porter, 616 So.2d at 908. However, at the time she was questioned she was not a suspect. Id. The opinion discloses that "Corporal Ed Williams decided to talk to the occupants of the house to learn what they knew about the baby because he `felt that somebody there knew something about the blood being around in that house.'" Id. Furthermore, even Porter stated that the officer directed the investigatory questions to everyone in the house so that they might discover who the mother was. Id. In the case sub judice, we are not dealing with an on-the-scene investigation. Rather, we are dealing with questioning that occurred during the execution of a search warrant.
¶ 45. The search warrant executed in this situation is not equivalent to the on-the-scene investigation but instead, as stated, was custodial in nature. See Luster v. State, 515 So.2d 1177, 1179 (Miss.1987); Nevels v. State, 216 So.2d 529, 530-31 (Miss.1968); see also Tolbert v. State, 511 So.2d 1368, 1374-76 (Miss.1987) (the aforementioned cases involved voluntary confessions that were given as the result of a general on-the-scene investigation of a crime scene, as a result of subsequent questioning as to any facts surrounding the crime.)
¶ 46. Miranda warnings are only necessary where a confession was given during the "accusatory stage" (i.e., when law enforcement charges a crime, such as when a warrant for an arrest is issued, or places the accused under arrest) of the investigation or where the interrogation is "custodial." Tolbert v. State, 511 So.2d 1368, 1375 (Miss.1987). Black's Law Dictionary has defined custodial interrogation as follows:
Custodial interrogation, within Miranda rule requiring that defendant be advised of his constitutional rights, means questioning initiated by law enforcement officers after a person had been taken into custody or otherwise deprived of his freedom in any significant way; custody can occur without formality of arrest and in areas other than in police station.

BLACK'S LAW DICTIONARY 384 (6th ed.1990) (emphasis added). In the case at bar, the investigation had not reached the accusatory stage at the time Officer Burse questioned Luckett about his reason for possessing the firearm; however, pursuant to the aforementioned definition it is clear that Luckett was being involuntarily detained and interrogated pursuant to the search warrant. I will first address why Luckett was in custody and then discuss the issue of interrogation.
¶ 47. In the case at bar, Luckett not only was a suspecthe was the only suspect. The search warrant had been specifically issued for his residence. The officers went to Luckett's house with a specific intentto confiscate drugs.
¶ 48. Luckett was in custody from the moment Officer Burse entered his residence. Officer Burse immediately drew a weapon on Luckett, as well as detaining him on the sofa. Officer Burse proceeded to secure and search him. Additionally, after the weapon was located near Luckett and removed, Officer Burse continued to *351 have officers oversee Luckett's activities while the search continued. The fact that no formal arrest had occurred does not prohibit me from the determination that Luckett was in custody at the time Officer Burse presented his question. I find that these facts divulge that Luckett was most certainly being significantly deprived of his freedom pursuant to the aforementioned definition of custody. Now, I must explain why I also find that there was an interrogation in this instance.
¶ 49. In Rhode Island v. Innis, the United States Supreme Court defined "interrogation" under Miranda, and although the definition is broader than stated here, the portion of that definition which is relevant to our case is as follows: "express questioning ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). In the case at bar, there was no immediate urgency in knowing the reason why there was a gun on the couch since it had already been confiscated by Officer Burse at the time the question was asked. The officer should have known that his question regarding why Luckett had the firearm was likely to evoke an incriminating response from Luckett. Therefore, an interrogation occurred.
¶ 50. The majority continues its analysis and applies the law in New York v. Quarles, 467 U.S. 649, 657-58, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), to the case at bar. However, the majority's reliance on this case is misplaced. The majority acknowledges that the facts are distinguishable from Luckett's; nonetheless, they still quote a limited excerpt from the case and erroneously extend it to the case sub judice.
¶ 51. In New York v. Quarles, a woman informed officers that she had just been raped by a man, and he entered a nearby supermarket carrying a weapon. Id. at 651-52, 104 S.Ct. 2626. The woman gave a description of her assailant to the officers. Id. One officer proceeded inside the grocery store where he located a man that matched the victim's description. Id. at 652, 104 S.Ct. 2626. The officer pursued the suspect with a drawn gun; however, for several seconds he lost sight of him. Id. Upon his detention the officer frisked him and discovered that there was an empty shoulder holster on his person. Id. After the officer had handcuffed him, he inquired where the gun was located, and the assailant told him. Id. Thereafter, he was arrested and read his Miranda rights and subsequently charged with criminal possession of a weapon. Id. The United States Supreme Court looked at the specific facts of the case and held that Quarles was in custody and subject to interrogation under the meaning of Miranda; nonetheless, the statement was not a violation of Quarles's Miranda rights and was admissible under the narrow "public safety" exception. Id. at 653, 104 S.Ct. 2626.
¶ 52. The "public safety" exception allows officers the opportunity to ask questions that are reasonably prompted out of concern for the safety of the public and not suffer the exclusion of the evidence at trial, even though the statements would otherwise be inadmissible because the questioning occurred during a custodial interrogation and no Miranda warning was administered. Id. at 656-57, 104 S.Ct. 2626. In New York v. Quarles, the court announced that there was an immediate necessity to determine the whereabouts of the weapon, it could have been used by a possible accomplice or discovered by a customer or store employee. Id. at 657, 104 S.Ct. 2626.
¶ 53. Unlike in New York v. Quarles, the record in our case does not reveal that *352 the situation posed a threat to the public's safety. Indeed, the record revealed that Luckett was the owner of the house and was the only one within the house at the time the search warrant was being executed. Additionally, the officers forcefully entered Luckett's house with firearms drawn and aimed at Luckett. Furthermore, Luckett was not brandishing the weapon in a threatening manner. Instead, it remained placed in plain view on the couch. Of significance is the testimony from Officer Burse that he was already in possession of the weapon when he asked Luckett why he had it. The situation presented to Officer Burse was already confronted and neutralized by him without the necessity of knowing why Luckett was in possession of the weapon. Nevertheless, Officer Burse asked Luckett an express question regarding the firearm.
¶ 54. Since I conclude that Luckett was subject to a custodial interrogation, it was incumbent upon the officers to issue his Miranda rights to him. Dees v. State, 758 So.2d 492, 495 (¶ 7) (Miss.Ct.App.2000). The testimony of Officer Burse shows that they failed to do this; therefore, the statement regarding Luckett's reason for possessing the firearm was inadmissible. Nevertheless, Miss.Code Ann. § 41-29-152 (Supp.2000) only requires possession of a firearm; therefore, even though a violation of Luckett's Miranda rights actually occurred, the admission of the statement regarding the reason for having the weapon constitutes harmless error. See Cooley v. State, 391 So.2d 614, 623 (Miss.1980). It is harmless error because Luckett was a prior convicted felon. Even without Luckett's statement there was sufficient testimony from Officers Burse, Tucker, and Thomas from which the jury could derive that Luckett had possession of the firearm. The officers stated that the firearm was in plain view on the couch in the presence of Luckett. Additionally, there was no testimony that anyone else was in the house at the time the search was conducted which would have negated the fact that the weapon was possessed by Luckett. Based on this, the jury was reasonable in its determination that Luckett was guilty of possession of a firearm.
PAYNE, BRIDGES AND CHANDLER, JJ., JOIN THIS SEPARATE WRITTEN OPINION.