842 So.2d 579 (2002)
Howard MOONEYHAM, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00376-COA.
Court of Appeals of Mississippi.
August 27, 2002.
Rehearing Denied October 29, 2002.
Certiorari Denied February 27, 2003.
*580 J. Edward Rainer, Brandon, attorney for appellant.
Office of the Attorney General by Charles W. Maris Jr., Jackson, attorney for appellee.
Before KING, P.J., LEE, and IRVING, JJ.
KING, P.J., for the Court:
¶ 1. Howard Mooneyham was found guilty in the Circuit Court of Rankin County, Mississippi of the possession of more than thirty grams of methamphetamine and the sale of methamphetamine. He was sentenced to serve a term of ten years in the custody of the Mississippi Department of Corrections on the possession charge and a term of fifteen years in the custody of the Mississippi Department of Corrections on the sale of methamphetamine. The sentences imposed were to run consecutively. Aggrieved by his conviction, Mooneyham has appealed and raised the following issues which we quote verbatim:
I. The trial court erred in failing to grant a continuance and admitting the testimony of Officer Roy Dampier and Officer Edward Benton as their status as witnesses was not disclosed to defendant until less than three days before trial.
II. The trial court erred in receiving into evidence the photographs marked as State's exhibits S-1, S-2 and S-4.
III. The trial court erred in failing to grant defendant's motion to suppress all evidence gleaned from the execution of the search warrant as the warrant must fail for want of probable cause based on the insufficiency of the underlying facts and circumstances on which the warrant was based.
IV. The trial court erred in failing to grant a mistrial based on the prejudicial *581 comments made by Officer Edward Benton in the presence of the jury.
V. The defendant's Sixth Amendment right to confront a witness against him was violated when defendant was not allowed to confront the expert that did the actual analysis of the substance found in his home.
VI. The trial court erred in failing to give the accomplice cautionary instructions marked D-10 and D-11.
VII. The trial court erred in allowing the prosecutor to comment during closing argument about any fictional "business" that was being operated at defendant's home and the presence of a park across the street from defendant's home.
VIII. The length of the sentence in this case ensures that defendant will spend the rest of his natural life in prison and is therefore a life sentence which amounts to cruel and unusual punishment.

FACTS
¶ 2. On May 12, 2000, Officer Edward Benton of the Pearl Police Department and a special contract agent with the Mississippi Bureau of Narcotics assisted Officer Roy Dampier (Pearl Police Department) in an "undercover buy" from Marcie Bowling. Bowling was subsequently arrested for selling methamphetamine to the officers. After which, Bowling agreed to make a "controlled buy" of more methamphetamine from her supplier, Howard Mooneyham.
¶ 3. In preparation for the "controlled buy," Bowling was taken to the Florence Police Department and searched to make sure that she did not have any narcotics or money on her at that time. Officer Benton then put a body wire on Bowling and gave her five one-hundred dollar bills (money from state funds) to purchase the narcotics. Officer Benton rode with Bowling to a pay phone where she paged Mooneyham. He called back and the transaction was arranged. Officer Benton lay in the car as Bowling approached Mooneyham's residence. Other officers were watching Mooneyham's house. Bowling exited the car and approached Mooneyham who was sitting on his front porch swing. Bowling laid the "marked money" beside her. Mooneyham picked up the money and gave her a bag, which contained a substance later determined to be methamphetamine. Bowling returned to the car and gave the bag to Officer Benton, who transported it to the crime lab the following day.
¶ 4. After Bowling purchased the substance, the assisting officers placed Mooneyham under arrest for the sale of a controlled substance. Mooneyham was advised of his Miranda rights and searched. In Mooneyham's pocket, Officer Benton found the "marked money" which was later confirmed to be the state funds given to Bowling for the buy (the money was compared with copies made prior to the buy).
¶ 5. After Mooneyham refused to allow the officers to search his house, Officers Edward Benton and Timothy Culpepper obtained a search warrant to search Mooneyham's house. The officers discovered additional amounts of a white substance thought to be methamphetamine in the attic of Mooneyham's house.
¶ 6. Prior to trial on February 8, 2001, there was a suppression hearing where Mooneyham's attorney requested that any written or oral statements given by Mooneyham and any physical evidence be excluded as being obtained in violation of his constitutional rights. After hearing the evidence presented, the trial court denied this motion. Mooneyham was found guilty of the possession of more than thirty grams of methamphetamine and guilty of *582 the sale of methamphetamine. He was sentenced to serve consecutive terms of ten and fifteen years in the custody of the Mississippi Department of Corrections.

ISSUES AND ANALYSIS

STANDARD OF REVIEW
¶ 7. The applicable standard of review regarding the admissibility of evidence is as follows:
Admissibility of evidence rests within the discretion of the trial court. However, this Court must also determine whether the trial court employed the proper legal standards in its fact findings governing evidence admissibility. If in fact the trial court has incorrectly perceived the applicable legal standard in its fact findings, the Court applies a substantially broader standard of review. However, a denial of a substantial right of the defendant must have been affected by the court's evidentiary ruling. Furthermore, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs.
Hayes v. State, 803 So.2d 473 (¶ 4) (Miss.Ct.App.2001).

I.

Did the trial court err in failing to grant a continuance and admitting the testimony of Officer Roy Dampier and Officer Edward Benton as their status as witnesses was not disclosed to defendant until less than three days before trial?
¶ 8. Mooneyham contends that the trial court erred in denying his motion for a continuance based upon the State's failure to submit its list of witnesses until three days prior to trial. Mooneyham's attorney claims he did not have enough time to interview the State's witnesses. Mooneyham asserts that the State violated Uniform Circuit and County Court Rule 9.04(I)[1] by failing to provide the list in a timely manner.
¶ 9. The decision to grant or deny a continuance is left to the sound discretion *583 of the trial court, and this Court shall not reverse for the denial of a continuance unless it appears that manifest injustice resulted from the denial. Buckley v. State, 772 So.2d 1059(¶ 2) (Miss.2000).
¶ 10. A review of the transcript reveals that the State had provided offense reports to Mooneyham's attorney but does not specifically indicate that a witness list was provided at the same time as the reports. The trial judge stated:
THE COURT: Today is February 8th. It appears to the court that, although Mr. Rainer didn't have the benefit of the discovery back in June, it appears to the court that the defendant, I guess, fired his attorney on the day of the plea offer, which I don't think should be held against the State. It appears to me the State produced discovery in a timely manner. It appears the State did try to work with Mr. Rainer as far back as January 24th in trying to ascertain additional discovery for him. So I'm going to deny that motion. I don't see any prejudice in the case against the defendant. Mr. Sumrall, his initial attorney, had the discovery since June.
. . . .
THE COURT: ... I think there is just as much a burden on the defense attorneys to try to come and get the discovery as it is for the prosecutors to give the discovery. So I'm going to overrule your motion ...
Mooneyham also claims that the testimony of Officers Roy Dampier and Edward Benton should not have been admitted because their status as witnesses was not disclosed until three days before trial.
¶ 11. The State maintains that because it provided the offense reports made by the officers, that this was sufficient notice of the substance of the officers' testimony. The trial judge determined that the information was provided in accordance with the discovery rule, but also allowed Mooneyham's attorney time to interview the officers. Although Mooneyham's attorney interviewed the officers, he stated that he wanted to make the court aware that he was not agreeing that this interview would cure any error that he may assign later. In response, the court stated the following:
THE COURT: I want the record to be clear that Mr. Rainer objects to going forward in this matter because of discovery surprise concerning the statement by Mr. Mooneyham that it was, quote, his money, when he was arrested. I think under Box, I have made sufficient provisions for Mr. Rainer to talk to the two witnesses who would be called to testify to the short statement. Therefore, I am not going to continue the trial....
While the State may have violated the discovery rules, the trial court took corrective action and determined that the information provided by the officers was not of such grievous harm that it would prejudice Mooneyham's defense. Williams v. State, 784 So.2d 230 (¶ 7) (Miss.Ct.App.2000). Having reviewed the testimony, we agree with the trial court on this matter.

II.

Did the trial court err in receiving into evidence the photographs marked as State's exhibits S-1, S-2 and S-4?
¶ 12. Mooneyham contends that the trial court erred by allowing photographs marked, as State's exhibits S-1, S-2 and S-4, in evidence. Mooneyham's attorney objected to the photographs and stated that the photographs were not "made known" to him until approximately fifteen minutes before trial. The trial judge allowed Mooneyham's attorney time to review the photos. S-1 is a picture of the open attic. S-2 is a picture of the *584 front of Mooneyham's residence. S-4 is a picture of insulation in the attic with a bag of white substance located inside. These pictures were marked for identification purposes and S-1 and S-2 were admitted in evidence.
¶ 13. While Mooneyham's attorney maintains that he was given sufficient time to look at the photographs, he was not given time to prepare an adequate defense to the photographs. According to Mooneyham, a continuance was still in order due to the undisclosed evidence. Mooneyham has not suggested to this Court any defense which was hampered by the lack of a continuance. Walker v. State, 671 So.2d 581, 592 (Miss.1995).
¶ 14. Mooneyham has not shown injury by allowing these photographs to be entered in evidence. Therefore, we find no error regarding this issue which would warrant a reversal.

III.

Did the trial court err in failing to grant defendant's motion to suppress all evidence gleaned from the execution of the search warrant as the warrant must fail for want of probable cause based on the insufficiency of the underlying facts and circumstances on which the warrant was based?
¶ 15. Mooneyham contends that the trial court erred in denying his motion to suppress all evidence obtained through the search warrant. He maintains that the warrant was not valid due to lack of probable cause based on the insufficiency of the underlying facts and circumstances portion of the warrant.
¶ 16. In determining whether evidence should be suppressed, a trial court's findings of fact are not disturbed on appeal absent a finding that the "trial judge applied an incorrect legal standard, committed manifest error, or made a decision contrary to the overwhelming weight of the evidence." Taylor v. State, 733 So.2d 251 (¶ 18) (Miss.1999).
¶ 17. The trial judge determined that:
The man of average caution looked at the total circumstances surrounding this particular warrant issuance, that it would find that probable cause existed. If you look at the underlying facts and circumstancesI indicated earlier, I have been involved in search warrant cases before the United States Supreme Court. I certainly would have written more in the underlying facts and circumstances. But I'm not out there in the field. These police officers are held to the same standard as the lawyers and legal scholars who operate within the system. If you look at the underlying facts and circumstances, the agent tells the judge what's going on. He's right up front with the judge. He tells the judge that at 104 Briar Hill Road in Florence, they purchased three grams of alleged crystal methamphetamine. And this is unusual. They tell the judge who they purchased it from, Marcie Bowling. She's going to be the CI in the next case. They arrested Marcie Bowling. And while talking to her, she cooperated with officers and allowed audio equipment to be placed on her person. And she went to a pay phone at the Amoco and called Howard Mooneyham, who said he would sell her two eight balls of crystal meth. After the phone call was made, Mooneyham was observed. Then the proof in the case reveals that surveillance agents observed Mooneyham going out to an out building next to the house. Marcie Bowling left Amoco, went to 120 Pearl Avenue, Richland, Mississippi, and purchased approximately six grams of alleged methamphetamine from the owner of the residence, *585 Howard Mooneyham, for $500. Once the transaction took place, officers secured the scene, asked for consent to search. It was denied, so then the officers applied for the warrant. Any person of average caution would think, or I think, have to assume that narcotics were being kept at that premises. So I find that this warrant was issued based upon probable cause....
¶ 18. The trial court determined that a consideration of the underlying facts and circumstances, showed there was probable cause. This finding is not inconsistent with the evidence. Roberson v. State, 595 So.2d 1310, 1317 (Miss.1992).

IV.

Did the trial court err in failing to grant a mistrial based on the prejudicial comments made by Officer Edward Benton in the presence of the jury?
¶ 19. Mooneyham contends that the trial court erred by failing to grant a mistrial based on prejudicial comments made by Officer Edward Benton during trial. Mooneyham claims that because Officer Benton was not testifying as, nor was qualified to be an expert, his testimony regarding the substance found at Mooneyham's residence was impermissible under M.R.E. 701[2] and URCCC 3.12.[3] Mooneyham maintains that Officer Benton made several references to the substance obtained before the substance was admitted in evidence. Officer Benton referred to the substance found as "crystal meth," "narcotics" or a "controlled substance."
¶ 20. The testimony at trial reveals the following:
MR. RAINER: Your Honor, once again, I'm sorry, but he keeps to [sic] referring to finding a controlled substance that's not in evidence at this point. It's prejudicial to the defendant. And I request the court to allow me to make a motion regarding this.
. . . .
THE COURT: All right, make your objection Mr. Rainer.
MR. RAINER: Your Honor, I made my objection. I just move the Court for a mistrial. It's highly prejudicial to my client for the officer to keep referring to the substance. He can say, I received a substance, or I found a substance.
. . . .
THE COURT: I don't see any prejudice. But Officer Benton, if you would, refer to anything else you refer to as a substance that was seized. Because generally that's the way the testimony goes. I seized a substance. Some of them say it appeared to me to be narcotics, but most people say, I seized a substance and transported it to the Crime Lab for testing. Police officers can't testify to things being a controlled *586 substance, only the criminalist from the Crime Lab can. So I'm not going to grant a mistrial, of course, unless the State doesn't have a Crime Lab analyst, and then I would certainly grant a mistrial. I'm going to overrule the objection.
. . . .
THE COURT: You may continue. Let me instruct the jury. Ladies and gentlemen, the detective in his testimony has referred to a substance that he sees as being a controlled substance. Police officers can't testify to thingsthey can testify to things that appear to them to be a controlled substance. But only a scientist can testify that a certain substance is, in fact, a controlled drug. So I'd ask you to disregard Detective Benton's testimony regarding any of the substances that he found as being controlled because he can't testify to that. Can each of you on your oath tell me that you will disregard his testimony? I have an affirmative nod from each of the jurors. You may continue.
¶ 21. The applicable standard of review of a trial court's denial of a mistrial is abuse of discretion. Pearson v. State, 790 So.2d 879(¶ 6) (Miss.Ct.App.2001). Whether to grant or deny a mistrial is within the sound discretion of the trial judge. Id. Because the trial judge took appropriate corrective action, we find no abuse of discretion on this issue.

V.

Whether the defendant's Sixth Amendment right to confront a witness against him was violated when defendant was not allowed to confront the expert that did the actual analysis of the substance found in his home.
¶ 22. Mooneyham contends that his Sixth Amendment right to confront the person who actually performed the crime lab tests was violated. He asserts that Monica Artis, the quality assurance manager for the Mississippi Crime Lab, was allowed to testify regarding the chain of custody and the results of the lab tests that she neither conducted nor supervised.
¶ 23. In this matter, Ms. Artis was recognized by the court as an expert forensic scientist in substance identification. Ms. Artis stated that she did not conduct nor supervise the performance of the lab tests, but that she is the supervisor of the person who conducted the tests.
¶ 24. The transcript reveals the following:
MR. RAINER: If it please the court, your Honor, this witness has not testified that she received the evidence from Officer Benton when he delivered it to her. I don't knowand she hasn't testified who received it. She hasn't testified that she tested the substances. Therefore, there's [sic] two problems. There's a chain of custody problem, and there's the requirement that the person, the scientist that does the test, testify to having done the test to insure the integrity of the test and to insure that there hasn't been any tampering with it. The witness testified that the analyst that receives it should be the first person to open it. She obviously was not the analyst that received it. She wasn't the first person that opened it. So she doesn't have any basis upon which to say that the evidence wasn't tampered with. There is a question of the integrity of the evidence. And there is a question of whether or not it could have been tampered with. This witness can't say and hasn't said that it hasn't been tampered with.
¶ 25. The court questioned Ms. Artis regarding her role and involvement in this case as follows:
Q. Did you oversee the results or did you oversee the test?

*587 A. What my role in this situation is, is after the analyst has conducted their analysis, all of the documentation that is generated from the analysis is given to me. I have to verify the results. And it is my responsibility to look at all the data and see if I would come to the same conclusion as the person that analyzed it.
Q. You did that in this particular case?
A. Right.
¶ 26. After this argument was presented to the court, the State cited to Hemphill v. State, 566 So.2d 207, 208 (Miss. 1990), which says, "[T]he test for the continuous possession [i.e., `chain of custody'] of evidence is whether or not there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence." "In such matters, the presumption of regularity supports the official acts of public officers," and the burden to produce evidence of a broken chain of custody (i.e., tampering) is on the defendant. Id.
¶ 27. The State also cited to Gray v. State, 728 So.2d 36 (¶¶ 83-85) (Miss.1998), which allowed DNA supervisors who qualified as experts to testify regarding test results conducted by others in the lab. The court in the present matter indicated that the chain of custody appeared to be complete. The court determined the following:
THE COURT: Okay, DNA area has cleared this up in that supervisory personnel from the FBI lab and the Relia Gene lab come and testify concerning the results of technicians who ran the tests. The supervisors actually never touched the substance. They don't run the tests. People in the lab do. What you do is, in my opinion, so far, the chain of custody is intact in this matter because the agents have testedjust because the agentsthe agents have testified under oath that the substance they saw on this witness stand were the same or similar condition to that that was seized during the drug raid itself, to me, completes the chain of custody. That there's no evidence of tampering, then I guess you could stand up in front of the jury and allege that the Crime Lab people have tampered with this evidence. But I don't see how you can prove it. It's been settled to me for a while that you don't have to go through all of these procedures regarding evidence checked into the Crime Lab. The Supreme Court has talked about this several times, and they've said the procedures of the Crime Lab have been accepted. Evidence is checked in by evidence check-in people, for the lack of a better term. It's placed in a secured vault. And the technicians come and get an exhibit, or somebody working under her would come get an exhibit.
While M.R.E. 803(6) requires that the custodian of records of the Mississippi Crime Lab may introduce lab reports, except where defendant objects on the ground that his Sixth Amendment right to confront the person who prepared the test is being violated, Ellis v. State, 661 So.2d 177, 182 (Miss.1995), we find that the trial court did not violate Mooneyham's Sixth Amendment right to confront the expert who performed the actual analysis on the substance based on the testimony provided above. Ms. Artis testified that she had to verify the results of the analysis. Therefore, she was capable of testifying to the test results and the chain of custody. Gray, 728 So.2d 36 at (¶ 85).

VI.

Did the trial court err in failing to give the accomplice cautionary instructions marked D-10 and D-11?
¶ 28. Mooneyham contends that the trial court should have granted the *588 cautionary instructions marked as D-10[4] and D-11.[5] Mooneyham maintains that Bowling was a co-conspirator and that the instructions should have been given pursuant to Derden v. State, 522 So.2d 752, 754 (Miss.1988), which states that "as a general rule a trial judge should not hesitate to grant the cautionary instruction when the State is relying upon the testimony of co-conspirators."
¶ 29. An accomplice for these purposes is a person who is implicated in the commission of the crime. Burke v. State, 576 So.2d 1239, 1242 (Miss.1991). In this instance, there has been no evidence which establishes that Bowling was a co-conspirator, co-defendant, or an accomplice. Bowling was actually working with law enforcement officials to apprehend a criminal. Therefore, we find that the trial court did not abuse its discretion and find this issue to be without merit.

VII.

Did the trial court err in allowing the prosecutor to comment during closing argument about any fictional "business" that was being operated at defendant's home and the presence of a park across the street from defendant's home?
¶ 30. Mooneyham contends that the trial court erred by allowing the prosecutor to claim during closing argument that Mooneyham operated a "business" at his home. He maintains that there was no evidence presented which established that he was operating a business from his home. The prosecutor made the following comment:
We now know that Howard Mooneyham, the defendant, was operating a business over on Pearl Avenue across from Westside Park in Richland.
Mooneyham's attorney objected to this statement because there was no evidence presented at trial which showed that Mooneyham conducted any business at his home. The trial court noted that both parties were to keep their arguments within the record as clearly as possible, and also stated that "there's a wide leeway in final argument for both sides."
¶ 31. Mooneyham contends that the comment was prejudicial in that it would suggest to the jury that he had been engaged in a long line of continuous criminal activity. It is well settled that counsel is allowed considerable latitude in the argument of cases, and is limited not only to the facts presented in evidence, but also to deductions and conclusions he may reasonably draw therefrom, and the application of the law to the facts. Carroll v. State, 755 So.2d 483 (¶ 7) (Miss.Ct.App.1999). Further, "where the argument does not result in `unjust prejudice against the accused as to result in a decision influenced by the prejudice so created,' we will find it harmless." Id.
*589 ¶ 32. In the second part of this issue regarding the mention of the park across the street from his home, Mooneyham did not raise an objection on this ground at trial. Where it is clear from the record that no objection was made to such testimony, the trial court cannot be put in error for not excluding such testimony. Hutchinson v. State, 391 So.2d 637, 639 (Miss.1980).

VIII.

Whether the length of the sentence in this case ensures that defendant will spend the rest of his natural life in prison and is therefore a life sentence which amounts to cruel and unusual punishment.
¶ 33. Mooneyham contends that his sentence amounts to cruel and unusual punishment. He was sentenced to serve a term of ten years and fifteen years, the sentences to run consecutively. Mooneyham asserts that at the time of sentencing he was fifty-seven years of age and would not be released until he is at least eighty-two years old. Based on an actuarial table presented by Mooneyham's attorney, the trial court noted that the full range of life expectancy of a white male in the United States at the present time is from seventy-two to seventy-five years old. Mooneyham suggests that his sentences amount to a life sentence which is not authorized by statute under the crime charged.
¶ 34. Mooneyham cites no authority as a basis for this contention. For sentence determination, "the trial court will make a record of and consider all relevant facts necessary to fix a sentence for a definite term [of years] reasonably expected to be less than life." Handford v. State, 736 So.2d 1069(¶ 8) (Miss.Ct.App. 1999). "The court should consider the age and life expectancy of the defendant and any other pertinent facts which would aid in fixing a proper sentence." Id. However, where the defendant is convicted of multiple offenses, this should not be taken to suggest that (1) he may not be subjected to full and appropriate punishment or (2) that his sentences may not be run consecutively. Robert v. State, 756 So.2d 806(¶ 14) (Miss.Ct.App.1999).
¶ 35. Mooneyham was not given the maximum penalty allowable for the crimes charged nor was he given a life sentence. A trial judge's decision on sentencing will generally not be disturbed on appeal as long as the sentence is within the range allowed by statute. Luckett v. State, 797 So.2d 339 (¶ 30) (Miss.Ct.App.2001). "Sentencing is purely a matter of trial court discretion so long as the sentence imposed lies within the statutory limits." Id. Therefore, we find no merit to this issue.
¶ 36. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF COUNT IPOSSESSION OF MORE THAN THIRTY GRAMS OF METHAMPHETAMINE AND SENTENCE OF TEN YEARS AND COUNT IISALE OF METHAMPHETAMINE AND A SENTENCE OF FIFTEEN YEARS TO BE SERVED CONSECUTIVELY TO SENTENCE IN COUNT I ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.
NOTES
[1] Uniform Circuit and County Court Rule 9.04(I) provides: I. If at any time prior to trial it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.

If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and
2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.
The court shall follow the same procedure for violation of discovery by the defense.
Discovery material shall not be filed with the clerk unless authorized by the court.
Willful violation by an attorney of an applicable discovery rule or an order issued pursuant thereto may subject the attorney to appropriate sanctions by the court.
[2] Mississippi Rules of Evidence 701 provides Opinion Testimony by Lay Witnesses: If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue.
[3] Uniform Rules of Circuit and County Court 3.12 states: Mistrials: Upon motion of any party, the court may declare a mistrial if there occurs during the trial, either inside or outside the courtroom, misconduct by the party, the party's attorneys, or someone acting at the behest of the party or the party's attorney, resulting in substantial and irreparable prejudice to the movant's case.

Upon motion of a party or its own motion, the court may declare a mistrial if:
1. The trial cannot proceed in conformity with law;
2. It appears there is no reasonable probability of the jury's agreement upon a verdict.
[4] Instruction D-10: The Court instructs you that Marcie Bowling has admitted to participation in the crime in which she claims Howard Mooneyham was also a participant. For this reason, you are instructed to regard her testimony with great suspicion and distrust, and to consider it with caution.
[5] Instruction D-11: The Court charges you that Marcie Bowling has admitted to the participation in the crimes in which she claims Howard Mooneyham was also a participant. If you believe that such testimony is reasonable and is neither improbable, self-contradictory or substantially impeached, then it is your duty to take such testimony into consideration in determining your verdict, and give it such weight, faith and credit as you believe it deserves; however, for the reason that Marcie Bowling has admitted to her participation in the crimes, you are instructed to regard all of her testimony with great suspicion and distrust, and consider it with caution.