ROBERTS, J.,
for the Court:
¶ 1. On January 7, 2008, a Harrison County grand jury indicted Robert Jenkins for possession of a controlled substance, specifically, an amount of cocaine that was .1 gram or more but less than two grams in weight. Originally, Jenkins was indicted as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev.2007); however, the State later moved to amend the indictment to charge Jenkins as a habitual offender pursuant to Mississippi Code Annotated section 99-19-83 (Rev.2007). The Harrison County Circuit Court granted the State’s motion, and Jenkins’s indictment was amended. After several unsuccessful pretrial motions, Jenkins’s trial began on September 16, 2009. After hearing evidence and testimony, the jury found Jenkins guilty, and he was sentenced to serve life in the custody of the Mississippi Department of Corrections (MDOC). Subsequent to trial, Jenkins filed a motion for a judgment notwithstanding the verdict and a motion for a new trial. The circuit judge denied both motions on March 26, 2010. Feeling aggrieved, Jenkins perfected his appeal.
FACTS AND PROCEDURAL HISTORY
¶ 2. This appeals stems from an incident that occurred on January 27, 2007. While working the midnight shift, Biloxi Police Officer Michael Brennan observed an African American male and three Hispanic males talking on Esters Boulevard near Bush Park in Biloxi, Mississippi. Upon seeing Officer Brennan, the three Hispanic males walked toward the park while the African American male began walking down Esters Boulevard alone. Officer Brennan observed the African American male stumbling and staggering. Believing him to be intoxicated, Officer Brennan approached the male, later determined to be Jenkins, to speak to him. During the course of the conversation, Officer Brennan noticed that there was a wad of white tissue paper in Jenkins’s mouth. Officer Brennan requested that Jenkins remove the tissue paper and place it on the hood of the patrol car. Jenkins complied, and upon placing the tissue paper on the hood of the patrol car, several white rocks fell out of the paper. Jenkins quickly picked up and swallowed one of the rocks. Officer Brennan placed the remaining rocks into an evidence bag and arrested Jenkins for public intoxication and possession of a controlled substance.
¶ 3. While Officer Brennan made contact with Jenkins, Officer Palmer, another officer in the area, made contact with the three Hispanic males to whom Jenkins was originally speaking.[1] After Officer Palmer determined that the three Hispanic males did not need to be detained, he proceeded to meet at Officer Brennan’s patrol car. Standing at the rear door of the patrol ear, Officers Palmer and Brennan engaged in a conversation in which Officer Palmer suggested to Officer Brennan that Jenkins may have been attempting to sell cocaine to the three Hispanic males. Jenkins, who was standing a short distance away at the front of the car, overheard the officers’ conversation and stated, “how do you know I was selling to them, maybe I bought from them, maybe they’re selling.”
¶ 4. Jenkins was then taken to the police department where Investigator Lance Chi-sum gave him his Miranda rights. Inves *276 tigator Chisum asked Jenkins if he waived those rights; he answered in the affirmative. At that time, Investigator Chisum questioned Jenkins about the substance in the tissue. Jenkins said it was either crack cocaine or a Vitamin B pill. Jenkins was formally charged, and at that time, he asserted he was unaware he was being charged until that point. He also asserted that he did not understand his Miranda rights and did not understand what he was signing when he waived those rights. The interrogation promptly ended.
¶ 5. Jenkins was indicted by the grand jury on one count of possession of cocaine in an amount of more than .1 gram but less than 2 grams. He was also indicted as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81. The State later moved to amend the indictment to reflect Jenkins’s status as a habitual pursuant to Mississippi Code Annotated section 99-19-83 as opposed to section 99-19-81. The circuit court granted the State’s motion and amended the indictment to reflect the change. Jenkins filed multiple pretrial motions including a motion to suppress several pieces of evidence, in particular, his confession and statements given to the police. The circuit court overruled this motion.
¶ 6. Jenkins’s jury trial began in the circuit court on September 16, 2009. The State offered the testimony of four witnesses: Officer Brennan; Investigator Chisum; Investigator Michael Mason; and the Associate Director of the Mississippi Crime Laboratory, Timothy Gross. After presenting its witnesses, the State rested. Jenkins moved for a directed verdict on the ground that the State had failed to prove an element of the crime, specifically the weight of the cocaine. The circuit judge overruled Jenkins’s motion. Both sides then rested. After deliberations, the jury returned a guilty verdict against Jenkins. Pursuant to the enhanced sentencing structure found in Mississippi Code Annotated section 99-19-83, Jenkins was sentenced to life in the custody of the MDOC. Jenkins then timely filed a motion for a judgment notwithstanding the verdict (JNOV) and a motion for a new trial. On March 26, 2010, the circuit judge denied Jenkins’s post-trial motions.
¶ 7. On appeal, Jenkins raises three issues, which we recite verbatim:
I. Whether the trial court erred when it denied the Appellant’s motion [for a JNOV] for legal insufficiency in the prosecution’s case, or, alternatively, to grant the Appellant a new trial where the verdict [is] against the overwhelming weight of the evidence.
II. Whether the trial court erred in failing to suppress an un-Miran-dized statement made by the accused, who was in custody, handcuffed, and under arrest, when the police officers engaged in a conversation they knew the accused could hear, and that the police knew or should have known was reasonably likely to illicit an incriminating response from the accused.
III. Whether the trial court erred in permitting a Mississippi Crime Laboratory supervisor to substitute as a witness, for the actual analyst, who was allowed to present analysis results as testimonial evidence in the place of the crime laboratory analyst who actually performed tests on evidence central to the prosecution’s case in violation of the Appellant’s Sixth Amendment right[s] to confront the witnesses against him.
Finding no error, we affirm the judgment of the circuit court.
*277 ANALYSIS
I. Denial of Post-Trial Motions
¶ 8. Jenkins first asserts that the circuit judge erred in denying both his motion for a JNOV and his motion for a new trial. We will address these issues separately.
A. JNOV
¶ 9. Following his trial, Jenkins promptly filed his motion for a JNOV, which the circuit judge denied. By appealing the denial of his motion for a JNOV, Jenkins is challenging the legal sufficiency of the evidence presented at trial. This Court’s standard of review when reviewing a challenge to the legal sufficiency is found in the often cited Mississippi Supreme Court case Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). The supreme court found that when reviewing challenges to the legal sufficiency of the evidence presented, “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). This Court will reverse and render the case if it is found that “the facts and inferences considered in a challenge to the sufficiency of the evidence ‘point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty.’ ” Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)).
¶ 10. With this standard of review in mind, Jenkins argues that “[n]o rational trier of fact could have found with certainty that [Jenkins] was in possession of the amount of cocaine required by statute because the witness offered by the [S]tate to prove the amount of cocaine in [Jenkins’s] possession could not establish the exact amount of cocaine.” To support his argument, Jenkins relies on Gross’s testimony. Gross served as the technical reviewer and the case administrative reviewer of the evidence, but he did not perform the actual test on the evidence. On direct examination, Gross testified that there was .1 gram of cocaine in the evidence submitted by the State; however, on cross-examination, he stated that “[t]he amount of actual cocaine in that particular evidence could be less than .1 gram.” Relying on this statement made at trial, Jenkins argues that the State failed to prove that he possessed at least .1 gram of cocaine which was alleged in the indictment. Although Gross did make that statement, he further testified, on re-direct, that “[a] sample reported out to be .1 gram[s] could be as much as .19 gram[s]” because it is the policy of the Mississippi crime lab to “truncate that amount and remove that weight and report it out as the lowest amount at one tenth of a gram.” The State further questioned Gross about the amount of cocaine present, and again, Gross asserted that “the exhibit contains cocaine and that the exhibit was weighed at .1 gram at least.”
¶ 11. Viewing the evidence presented in the light most favorable to the State, we find that a rational trier of fact could determine that Jenkins was in possession of at least .1 gram of cocaine; therefore, this issue is without merit.
B. New Trial
¶ 12. Jenkins next asserts that the circuit court erred in denying his motion for a new trial. Unlike a motion for a JNOV that challenges the sufficiency of the evidence, a motion for a new trial challenges the weight of the evidence. When reviewing a challenge to the weight of the evidence, this Court views the evidence in a light most favorable to the verdict and “will only disturb a verdict *278 when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18) (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)).
¶ 13. As was discussed above, the State was required to prove that Jenkins possessed at least .1 gram of cocaine at the time of his arrest. Jenkins argues that the State failed to prove that he was in possession of at least .1 gram of cocaine because the only evidence presented was through Gross’s testimony, and Gross’s knowledge was based solely on information contained in reports he reviewed after the analysis had been completed. It appears from Jenkins’s brief that his sole contention is that Gross did not participate in the actual testing; thus, Gross’s testimony that the evidence was at least .1 gram of cocaine did not prove that Jenkins possessed that amount. Because of Gross’s alleged inability to testify to the exact amount, Jenkins further argues that the jury’s decision was “a decision grounded in mere supposition.” We disagree.
¶ 14. Bearing in mind our standard of review, we find that the verdict is not so contrary to the overwhelming weight of the evidence that allowing it to stand would rise to the level of an unconscionable injustice. Although Gross did not physically perform the actual test, his role as the Associate Director of the Mississippi Crime Laboratory, serving as the manager of the Gulf Coast Laboratory, and his role as the technical reviewer of this case provided him with sufficient knowledge of the test, the procedures, and the results. As technical reviewer, Gross reviews the data in the file to ensure that it supported the analyst’s conclusions on the report. His finding, based on his review of the data contained in the file, was that there was at least .1 gram of cocaine. A witness’s credibility is properly left to the discretion of the jury. Moore v. State, 969 So.2d 153, 156 (¶ 11) (Miss.Ct.App.2007). Thus, after Gross was accepted as an expert witness in the field of narcotics analysis, it was within the jury’s discretion to determine the credibility of his testimony as to the amount of cocaine that was present.[2]
¶ 15. This issue is without merit.
II. Suppression of Statement
¶ 16. Jenkins next argues that the circuit judge erred in allowing his statement made at the time of his arrest into evidence since he had not been given his Miranda rights. The standard of review when reviewing a trial court’s admission or exclusion of evidence is abuse of discretion. Young v. State, 981 So.2d 308, 313 (¶ 17) (Miss.Ct.App.2007) (citing Floyd v. City of Crystal Springs, 749 So.2d 110, 113 (¶ 12) (Miss.1999)). This Court will reverse the decision if it is found that “a substantial right of the defendant is adversely affected by the improperly admitted or excluded evidence.” Id.
¶ 17. Prior to being given his Miranda rights, Jenkins made a statement to the arresting police officers after hearing a conversation between the police officers. Jenkins was handcuffed and standing by the front tire of the patrol car; Officers Brennan and Palmer were standing by the rear, driver’s side door. Officer Palmer told Officer Brennan that he had made contact with the three Hispanic males that Jenkins had been talking to and that “per *279 haps Mr. Jenkins was going to sell them the crack rocks.” Officer Brennan testified that Jenkins overheard that comment and said, in response, “how do you know I was selling to them, maybe I bought from them, maybe they’re selling.” At trial, the circuit judge heard Jenkins’s motion to suppress his statement but overruled the motion finding that Jenkins’s statement was not prompted or solicited by the officers; instead, it was made spontaneously.
¶ 18. The United States Supreme Court held in Rhode Island v. Innis, 446 U.S. 291, 300-301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980):
[T]he Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its junctional equivalent That is to say, the term “interrogation” under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.
(Emphasis added).
Jenkins argues that, prior to being given his Miranda rights, he was subject to the functional equivalent of an interrogation. Functional equivalent has been defined to be “any sort of activity that the police reasonably believe will produce an incriminating response.” Roberts v. State, 53 So.3d 803, 808 (¶ 10) (Miss.Ct.App.2010) (citing Innis, 446 U.S. at 302, 100 S.Ct. 1682). It is undisputed that Jenkins was in custody at the time he made the statements; however, the State disagrees with Jenkins’s assertion that the officers’ conversation is the functional equivalent as contemplated by the Supreme Court. Jenkins submits that the situation found in Snow v. State, 800 So.2d 472 (Miss.2001) (overruled in part on other grounds by Snow v. State, 875 So.2d 188, 191 (¶ 5) (Miss.2004)), closely resembles the facts of his case. Eric Snow shot two correctional officers in his attempt to escape from prison. Snow, 800 So.2d at 477 (¶¶ 2-3). Once he was apprehended, Snow and an officer were in the backseat of the patrol car, and the officer told Snow that shooting the officers was a “stupid thing for [him] to [have] do[ne][.]” Id. at 496 (¶ 88). Snow’s response was “it sure was.” Id. Although the supreme court found that Snow voluntarily waived his Miranda rights, the court also noted that the officer’s comment was one that would likely elicit a response, id. at. 497-98 (¶¶ 93, 96). The facts of the current case more closely resemble the facts of Innis as opposed to Snow. In the current case, Jenkins overheard a conversation between two officers discussing what they had just personally observed, neither of whom were speaking directly to Jenkins. Similarly, in Innis, two officers were driving in the patrol car with Thomas Innis in the backseat, and the officers began discussing the safety concerns about the missing and loaded weapon in a school area. Innis, 446 U.S. at 294-95, 100 S.Ct. 1682. Innis told the officers to take him back to the scene so he could show them where the gun was located. Id. The Supreme Court held that:
[T]he conversation between Patrolmen Gleckman and McKenna included no express questioning of the respondent. Rather, that conversation was, at least in form, nothing more than a dialogue between the two officers to which no response from the respondent was invited.
Moreover, it cannot be fairly concluded that the respondent was subjected to the “functional equivalent” of questioning. It cannot be said, in short, that Patrolmen Gleckman and McKenna should have known that their conversation was *280 reasonably likely to elicit an incriminating response from the respondent.
Id. at 302, 100 S.Ct. 1682. Just as in Innis, the conversation between Officers Brennan and Palmer was simply a dialogue between the two officers and was not the functional equivalent of an interrogation since it was not a statement or comment likely to elicit an incriminating response from Jenkins.
¶ 19. We find that the circuit judge did not abuse his -discretion in allowing the statement into evidence at trial. Therefore, this issue is without merit.
III. Confrontation of a Witness
¶20. Jenkins’s final assertion is that the circuit judge erred in allowing Gross to testify in place of Alison Smith, the analyst who had performed the actual tests on the cocaine, which he claims violated his Sixth Amendment right to confront the witnesses against him. Smith was unavailable to testify because she had taken an indefinite leave of absence after an unexpected stage-four cancer diagnosis. It is well settled that this Court’s standard of review for the admission or exclusion of evidence is abuse of discretion. Young, 981 So.2d at 313 (¶ 17).
¶ 21. It is also important to note that our review of the record does not indicate that either Jenkins or his attorney filed a pretrial motion in limine objecting to Gross testifying in place of Smith as a violation of the Confrontation Clause. Pri- or to the beginning of trial, the circuit court heard several arguments on motions made by Jenkins; however, none of these motions dealt with this particular issue. During trial, but in the absence of the jury, it was the State, not Jenkins, that brought to circuit court’s attention that Gross would be testifying in place of Smith due to Smith’s illness. It appears that the State had notified Jenkins’s attorney two days prior to trial that Smith was unavailable to testify. Once brought to the circuit court’s attention, the circuit judge stated that he understood the defense would be objecting to Gross testifying based on hearsay, his qualifications as an expert witness, and the Confrontation Clause. Jenkins’s attorney responded in the affirmative each time the circuit judge asked if these would be the bases of her objection. The circuit judge overruled the objections, and the trial continued with Gross admitted as an expert witness and the crime laboratory report, which was signed by Smith and Gross, and admitted into evidence. In fact, Jenkins’s attorney did not object any further, even when specifically asked by the circuit judge if she had any objections to Gross being qualified as an expert in the field of narcotics analysis or when the State offered Exhibit 5, the crime laboratory report, into evidence. In each instance, Jenkins’s attorney responded to the circuit judge’s question of “any objection” by saying, “no, judge.” It is well settled that the failure to make a contemporaneous objection bars the issue from being raised on appellate review. Rubenstein v. State, 941 So.2d 735, 751 (¶ 27) (Miss.2006) (citing Walker v. State, 671 So.2d 581, 597 (Miss.1995)). Procedural bar notwithstanding, we will address this issue.
¶ 22. Jenkins relies on the analysis found in Brown v. State, 999 So.2d 853, 861 (¶ 18) (Miss.Ct.App.2008), to argue that Gross should not have been permitted to testify. In Brown, this Court stated that: “[W]hen the testifying witness is a court-accepted expert in the relevant field who participated in the analysis in some capacity, such as by performing procedural checks, then the testifying witness’s testimony does not violate a defendant’s Sixth Amendment rights.” Id. at 860 (¶ 14) (quoting McGowen v. State, 859 So.2d 320, *281 339 (¶ 68) (Miss.2003)). At issue in that case was whether Amrita Lal-Paterson could testify as to the DNA results of a test that she did not personally conduct. This Court found that Paterson had “actively participated in the analysis, forming her own opinion report on the DNA samples tested. She was also a laboratory manager at the time the tests were taken and was directly involved with checking the work of each analyst, and in fact performed checks on the tests run by [Chris] Larson.” Id. at 861 (¶ 18). This Court found that Paterson’s role was sufficient and that there was no Confrontation Clause issue in this case since it was her role to review the analyst’s work and further analyze the work. Id. Although this Court found that Paterson could testify, Jenkins argues that Brown provided a set of guidelines to determine if an expert may testify on behalf of a lab analyst without concern about a violation of the Confrontation Clause. He submits that there is no violation when the expert actively participated in the analysis and formed an independent opinion. Id. The expert also acted in his capacity as a lab manager at the time the tests were taken. Id. Further, the expert was directly involved with checking the work of each analyst by performing checks on the tests run and was not so far removed from the testing process as to be reduced to the level of a records custodian. Id. Based on these guidelines, Jenkins argues that Gross was not qualified to testify in Smith’s place.
¶ 23. The circuit court allowed Gross to testify as an expert witness in the identification of controlled substances/narcotics analyst citing Mooneyham v. State, 842 So.2d 579, 587 (¶ 27) (Miss.Ct.App.2002) (citing Gray v. State, 728 So.2d 36, 56 (¶ 90) (Miss.1998)), for the proposition that allowing Gross to testify regarding test results and the chain of custody was all within scope of his employment as the technical reviewer and administrative reviewer. Gross testified that he had served as technical reviewer and administrative reviewer of the tests performed in this case. His role as administrative reviewer was to review the analyst’s report for grammatical errors and general accuracy. As technical reviewer, Gross reviewed all the data that was submitted in the case “in order to ensure that the data supported the [analyst’s] conclusions.” At trial, Gross explained what tests were performed and, generally, how these tests were performed. On direct-examination, Gross testified that, after reviewing the crime lab report, worksheet, and the chromatography mass spectroscopy data, it was his own conclusion that the exhibit contained cocaine. Finding his conclusion to be in agreement with Smith’s conclusion, he signed off on Smith’s report that stated that the exhibit contained cocaine. The crime laboratory report, signed by both Smith and Gross, was admitted in evidence without objection and concludes that the sample was “Cocaine, Amount: 0.1 Gram.”
¶ 24. Jenkins’s main issue is that under the analysis outlined in Brown, Gross did not actively participate in the analysis and was, in effect, so far removed from the testing process that he was the equivalent of a records custodian so much that he should not have been permitted to testify in the place of Smith. Jenkins further relies on the recent United States Supreme Court case Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), arguing that only properly qualified experts may testify as to laboratory tests performed by analysts. In Melendez-Diaz, “certificates of analysis” containing the weight of the substance and that the substance was cocaine were submitted into evidence. Id. at 2531. Luis Melendez-Diaz objected to the admission *282 of these certificates because it violated the Confrontation Clause. The Supreme Court found that the certificates, which were presented without any additional testimony, were testimonial statements and that the analysts who prepared the certificates are witnesses that Melendez-Diaz should have had the opportunity to cross-examine. Id. at 2532.
¶25. The holding in Melendez-Diaz does not change the analysis of this case. The certificates introduced in Melendez-Diaz were testimonial in nature, and Melendez-Diaz never had the opportunity to cross-examine the authors of the certificates. The Supreme Court found that “[t]he ‘certificates’ are functionally identical to live, in-court testimony, doing ‘precisely what a witness does on direct examination.’” Id. at 2532 (quoting Davis v. Washington, 547 U.S. 813, 830, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)). That is not the situation in the current case. Jenkins had the opportunity to cross-examine Gross about his opinion and how he came to the conclusion that the substance was cocaine. Considering the facts of this case, the holdings in Mooneyham and Brown control. In Mooneyham, this Court found that Monica Artis was the quality assurance manager at the Mississippi Crime Laboratory, and as part of her duties, she had to verify the results of the analysis; “[t]herefore, she was capable of testifying to the test results and the chain of custody.” Mooneyham, 842 So.2d at 587(¶ 27). Jenkins’s assertion that Gross was reduced to the level of a records custodian is inaccurate. As the technical reviewer, Gross reviewed several documents resulting from the tests performed and came to the conclusion that the exhibit contained cocaine which was the same conclusion that Smith had reported. When questioned by the State, Gross gave his expert opinion that the sample tested was, in fact, cocaine weighing. 1 gram. Jenkins had the opportunity to cross-examine Gross as to how he had formed his opinion that the exhibit contained cocaine. Gross was Jenkins’s accusing witness, and Jenkins was afforded ample opportunity to confront him about his testimony.
¶ 26. On June 23, 2011, the United States Supreme Court issued its opinion in Bullcoming v. New Mexico, — U.S. —, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), which addresses a similar issue involving the Sixth Amendment’s Confrontation Clause. Donald Bullcoming was charged with aggravated driving while intoxicated (DWI). Id. at 2709. At trial, New Mexico introduced a forensic laboratory report that certified Bullcoming’s blood-alcohol concentration was above the threshold for aggravated DWI; however, New Mexico did not call Curtis Caylor, the forensic analyst with the New Mexico Department of Health, Scientific Laboratory Division (SLD) who had performed the test and signed the certification, to testify. Id. at 2709. Instead, Gerasimos Razatos, a scientist with the SLD, testified as to Cay-lor’s findings. Id. at 2709. Razatos had neither observed nor reviewed Caylor’s analysis. Id. Bulleoming objected to Raza-tos testifying at trial because it was a violation of the Confrontation Clause. Id. at 2712. His objection was overruled. Id. Bullcoming was convicted and subsequently appealed his conviction. Id. The New Mexico supreme court found that Razatos was properly permitted to testify because Caylor “simply transcribed the results generated by the gas chromatograph machine,” and because “although [Razatos] did not participate in testing Bullcoming’s blood, [he] ‘qualified as an expert witness with respect to the gas chromatograph machine.’ ” Id. at 2713. The New Mexico supreme court reasoned that Razatos was able to be cross-examined regarding how the machine operated, SLD procedures, *283 and the results of Bullcoming’s blood test. Id. The Supreme Court granted certiorari to address whether the Confrontation Clause allows “the prosecution to introduce a forensic laboratory report containing a testimonial certification, made in order to prove a fact at a criminal trial, through the in-court testimony of an analyst who did not sign the certification or personally perform or observe the performance of the test reported in the certification.” Id. To that question, they held that: “[A]s a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness.” Id. Thus, when New Mexico introduced Caylor’s certification, Caylor, not Razatos, became a witness that Bull-coming had the right to confront. Id. at 2716.
¶ 27. At first blush, it would appear that the Supreme Court’s decisions in Melendez-Diaz and Bullcoming require us to find in Jenkins’s favor since Smith did not testify at trial; however, as it was explained in regard to the Melendez-Diaz decision, the recent Bullcoming decision is not controlling in Jenkins’s ease.
¶ 28. The Bullcoming decision was a 5-4 decision with Justice Ginsburg writing for the majority and with Justices Kennedy, Breyer, and Alito and Chief Justice Roberts dissenting. In Justice Sotoma-yor’s concurrence, joined by Justices Thomas and Kagan, she provides several situations in which their decision would not necessarily be applicable. In one situation, Justice Sotomayor stated, “this is not a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue.” Id. at 2722 (Sotomayor, J., concurring in part) (emphasis added). Justice Sotomayor stated that they were not addressing what degree of involvement is sufficient because Raza-tos was not involved with the test or report at all. Id. Unlike Razatos, Gross was the technical reviewer of the case and Smith’s supervisor. Although he did not personally watch Smith perform all of her tests, he reviewed her work and, based upon his review of her work, found that the substance contained at least .1 gram of cocaine.
¶ 29. A second situation that Justice Sotomayor suggests that the Supreme Court does not address in its opinion is one “in which an expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence.” Id. In its majority opinion, the Supreme Court specifically noted that New Mexico never “assert[ed] that Razatos had any ‘independent opinion’ concerning Bullcoming’s BAC.” Id. at 2716. In the current case, Gross was tendered as an expert witness, and the report was entered into evidence with no objection from Jenkins. At trial, Gross was specifically asked, if in his expert opinion, whether the substance found in the evidence bags was cocaine. He testified that it was his independent, expert opinion that, based on his review of the documents, the substance was cocaine. Based on our analysis of the Bullcoming decision, we find that it is not applicable to the current case.
¶ 30. To summarize, Jenkins’s Confrontation Clause issue is waived and not preserved for appellate review since there was no motion in limine or contemporaneous objection found in the record. However, even if properly preserved, Gross testified to his own independent, expert opinion that the sample was, in fact, cocaine weighing .1 gram and signed the crime laboratory report which was also admitted in evi *284 dence. Therefore, the circuit court did not abuse its discretion in allowing Gross to testify. This issue is procedurally barred and without merit.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF POSSESSION OF COCAINE AND SENTENCE OF LIFE AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
LEE, C.J., GRIFFIS, P.J., ISHEE, CARLTON AND RUSSELL, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. MYERS, J., NOT PARTICIPATING.

. Officer Palmer’s first name was not contained in the record.

. Gross testified that he was currently the Associate Director of the Mississippi Crime Laboratory, had been employed there for twenty-eight years, performed approximately 100,000 drug analyses in his career, and testified in court as an expert witness over 250 times.