# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-02078-COA

CASEY MARK BURGESS A/K/A CASEY BURGESS A/K/A CASEY M. BURGESS      APPELLANT

v.

STATE OF MISSISSIPPI      APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/19/2013 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DONALD W. BOYKIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, ATTEMPTED KIDNAPPING, AND SENTENCED TO TEN YEARS; AND COUNT II, AGGRAVATED ASSAULT, AND SENTENCED TO TWENTY YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 05/17/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND JAMES, JJ.**

**JAMES, J., FOR THE COURT:**

¶1. On November 8, 2012, Casey Mark Burgess was indicted for attempted kidnapping in violation of Mississippi Code Annotated section 97-3-53 (Rev. 2014) and aggravated assault in violation of Mississippi Code Annotated section 97-3-7(2)(b) (Supp. 2015). On June 18-19, 2013, Burgess was tried and found guilty by a Rankin County jury of both

charges. Burgess was sentenced to ten years for attempted kidnapping and twenty years for aggravated assault, to be served in the custody of the Mississippi Department of Corrections (MDOC), with the sentences to run concurrently to each other, but consecutively to the sentence that Burgess had received in a separate case, Rankin County Circuit Court cause number 23-730.[1] Burgess argues that the trial court erred by admitting certain evidence; refusing to admit certain evidence; giving a certain jury instruction; and denying his constitutional right to a fair and impartial jury. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    Jeanette Yung, the victim, testified to a detailed account of the aggravated assault and attempted kidnapping. On the witness stand, Yung affirmatively identified Burgess as her attacker. Yung testified that on September 1, 2011, she and her two-year-old daughter arrived at their home in the Castlewoods subdivision with groceries and a greeting card she had purchased from Walmart. Immediately after Yung parked her vehicle in her garage, Burgess pulled into her driveway, effectively blocking in her vehicle. Yung exited her vehicle holding her Walmart shopping bags, with the greeting card in one of the shopping bags. Yung's daughter remained in her carseat in the vehicle. Yung did not know Burgess, and had never seen him before. Yung testified that he was wearing a baseball cap. Burgess exited his truck, then told Yung, "I've got your paperwork," and began to approach her.

¶3.    Burgess continued approaching Yung. He was armed with a Leatherman knife in his hand. He told her: "[G]et in [my] f***ing truck or I'm going to stab you." Burgess grabbed

---

[1] On April 3, 2013, Burgess was convicted of three counts of sexual battery against his wife in cause number 23-730.

Yung's arms and shoved her toward his truck while holding the knife to her side. Yung resisted. Burgess put the knife to her neck, and put her in his truck. Yung continued to resist and struggled for the knife. During the struggle, she dropped the items she was holding. She also suffered cuts to her hands and bruises on her arms. Yung was able to get the knife from Burgess and free herself from him. Yung ran to the front of her house screaming for help. She looked to check on her daughter, and then she saw Burgess get into his truck and speed away. Yung called 9-1-1, and law enforcement responded to the scene. Yung was taken to the ER for treatment of her injuries.

¶4. Investigators of the Rankin County Sheriff's Department discovered a baseball cap; a plastic Walmart bag with items inside; a Leatherman tool with the blade exposed and blood on it; and droplets of blood, all in Yung's driveway near her garage.

¶5. Later that day, on September 1, 2011, a sheriff's deputy spotted Burgess in his truck near his home. The deputy began to pursue him, and Burgess sped off. The deputy lost sight of Burgess. A few minutes later, the deputy received a call informing him of an auto accident involving a truck matching the description of Burgess's truck several miles down the road. Burgess had wrecked his truck, and fled into the woods. The deputy arrived to the scene, entered the woods, and apprehended Burgess as he was coming out of the woods.

¶6. The day after the attack, Investigators Raymond Duke and Chris Barnes met Yung at the wrecker yard where the truck had been towed. Yung confirmed that the truck was the same truck that Burgess was driving the day of the attack. Yung identified the greeting card she had purchased at Walmart on the floorboard of the truck. Yung also identified Burgess

3

in a photo lineup. Investigators discovered an empty Leatherman tool sheath in the truck.

¶7. Burgess testified in his own defense at trial. Burgess admitted to being in Yung's driveway, but denied having any intent to harm her. Burgess testified to a different account of what transpired. Burgess, who had previously lived in Castlewoods, testified that he was in the subdivision that day collecting discarded items that had been placed on the curb. He explained that one of his hobbies was picking up salvageable items. Burgess's mother also testified confirming that Burgess had a hobby of collecting salvageable items. Burgess testified that he backed into Yung's driveway to turn around, because he wanted to go back to a box he had seen about two houses down from her driveway.

¶8. Burgess testified that while he was in her driveway, his cell phone started ringing, but it fell between the passenger's seat and the center console. Burgess put the truck in park and walked around to the passenger side to retrieve his cell phone. When he opened the passenger door, a sheet of paper from a stack of paperwork on his passenger seat blew out of his truck. A Leatherman was under the stack of paperwork. He grabbed the stack of paperwork, and picked up the Leatherman with the blade exposed.

¶9. At this time, Burgess saw Yung in the driveway outside the garage. Burgess felt obligated to tell her that he was getting his paperwork, because he was in her driveway. Burgess testified that Yung came toward him, gasped, and said: "Take anything you want. Take anything you want." Burgess denied touching her. Instead, he claimed Yung grabbed his hand, and admitted there was "a struggle." Burgess testified that Yung eventually pulled the Leatherman out of his hands, and then ran away from him screaming, "Help. Help."

4

Burgess closed the passenger door, and picked up a pocketknife that had been clipped to his pocket that had fallen to the ground. He testified that he got into his truck and drove off quickly because he was scared Yung would alert the police. He also testified that he quickly left because he had been drinking alcohol, smoking crack cocaine, and had drugs in his truck.

¶10. On cross-examination, the prosecutor questioned Burgess on inconsistencies between his videoed interview he had with law enforcement following his arrest and his testimony at trial. Burgess's videoed interview with law enforcement was entered into evidence and played for the jury at trial.

¶11. The jury returned a verdict finding Burgess guilty for attempted kidnapping and aggravated assault. Burgess was sentenced to ten years for attempted kidnapping and twenty years for aggravated assault, to be served in the custody of the MDOC, with the sentences to run concurrently, but consecutively to the sentence that Burgess had received in cause number 23-730. Burgess filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied the motion, and Burgess filed his notice of appeal.

¶12. Burgess raises five issues on appeal: (1) whether evidence of Burgess's prior felony convictions should have been excluded and whether evidence of his intent to appeal those convictions should have been admitted; (2) whether the trial court erred by not granting a mistrial following testimony that Burgess had been interviewed by law enforcement regarding an assault on his wife; (3) whether the trial court erred by not admitting Burgess's cell-phone records; (4) whether the trial court erred by giving jury instruction S-3A; and (5)

whether Burgess's constitutional right to a fair and impartial jury was denied.

## DISCUSSION

I. **Whether the trial court erred by admitting Burgess's prior felony convictions and excluding evidence of Burgess's intent to appeal those convictions**.

¶13. Burgess argues that the trial court erred by allowing evidence of Burgess's three prior felony convictions for sexual battery. Burgess argued that evidence of the prior convictions should not have been permitted under Mississippi Rule of Evidence 609(a)(1).

¶14. A trial court's decision to admit a prior conviction for impeachment is reviewed under an abuse-of-discretion standard. *Myers v. State*, 153 So. 3d 581, 587 (¶21) (Miss. 2014) (citing *Strickland v. State*, 980 So. 2d 908, 919 (¶18) (Miss. 2008)).

¶15. Rule 609(a)(1) of the Mississippi Rules of Evidence states:

(a) General Rule. For the purpose of attacking the character for truthfulness of a witness,

(1) evidence that (A) a nonparty witness has been convicted of a crime shall be admitted subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and (B) a party has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the party[.]

¶16. Burgess cites *McInnis v. State*, 527 So. 2d 84 (Miss. 1984), in support of his argument that his three prior felony convictions for sexual battery have no probative value on the issue of truthfulness, and should not have been admitted for impeachment purposes. However, *McInnis* was overruled to the extent that it held only prior convictions relating to dishonesty or a false statement were allowed to be used for impeachment purposes. *White v. State*, 785

6

So. 2d 1059, 1061 (¶¶5-6) (Miss. 2001). Indeed, "[a] crime which does not involve propensity of truthfulness may be admissible under 609(a)(1) so long as it meets the requirements which are set forth in that rule." *Triplett v. State*, 881 So. 2d 303, 305 (¶10) (Miss. Ct. App. 2004).

¶17. "Convictions offered under 609(a)(1) to impeach a party must be analyzed under the guidelines set forth in *Peterson*[2] to determine if the probative value is great enough to overcome the presumed prejudicial effect to that party, and findings should be made on the record by the judge." *Strickland*, 980 So. 2d at 920 (¶18) (citing M.R.E. 609 cmt.). The *Peterson* factors include: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *Peterson*, 518 So. 2d at 636.

¶18. At the close of the prosecution's case-in-chief, Burgess made the decision that he would take the stand to testify. The prosecution moved the trial court to permit it to introduce evidence of Burgess's three prior felony convictions for sexual battery for impeachment purposes.

¶19. The trial court conducted a full, on-the-record *Peterson* hearing. The trial court made a finding as to each *Peterson* factor, concluded that the factors overall weighed in favor of admissibility, and determined that the probative value of admitting evidence of the three prior felony convictions outweighed any prejudicial effect to Burgess. However, the trial court

---

[2] *Peterson v. State,* 518 So. 2d 632 (Miss. 1987).

7

ruled that the jury would not be allowed to hear that the three prior felony convictions were for sexual battery nor any other details of those convictions. The trial court instructed the jury that evidence of Burgess's prior convictions was not evidence of guilt for the attempted kidnapping and aggravated assault of Yung. The trial court also instructed the jury that evidence of the prior convictions could be used in assessing the credibility of Burgess as a witness. After reviewing the record and the trial court's *Peterson* analysis, we find that the trial court did not abuse its discretion in admitting Burgess's three prior felony convictions under Rule 609(a)(1).

¶20. Burgess also argues that the trial court erred by denying him the opportunity to testify that he intended to appeal the three prior felony convictions. Mississippi Rule of Evidence 609(e) provides: "The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. Evidence of the pendency of an appeal is admissible." The comment to Rule 609(e) states that, "[o]nce the prior conviction has been introduced, the adversary can present evidence that an appeal of that conviction is pending."

¶21. Although evidence of the pendency of an appeal is admissible under Rule 609(e), there was no evidence that Burgess had actually appealed his three prior felony convictions for sexual battery at the time of his trial.[3] Because there was no *pending* appeal at the time of the trial as required by Rule 609(e), the trial court did not err by refusing to allow testimony regarding Burgess's *intent* to appeal his prior convictions.

II.     **Whether the trial court erred by not granting a mistrial following**

---

[3] On September 5, 2013, Burgess filed a notice of appeal in cause number 23-730. *Burgess v. State*, 2013-KA-01516-SCT.

**testimony that Burgess had been interviewed by law enforcement regarding an assault on his wife.**

¶22.   Burgess argues the trial court erred by not granting a mistrial after a law-enforcement officer testified that Burgess had been interviewed for an assault on his wife and Yung.

¶23.   On direct examination, Investigator Wayne Humphreys, of the Rankin County Sheriff's Department, testified that Burgess was arrested and advised of his *Miranda*[4] rights. After Burgess waived his *Miranda* rights, he gave a videoed interview with law-enforcement investigators.  Investigator Humphreys gave the following testimony regarding the videoed interview:

> Q:     And what portion of that – of the interview does that videotape deal with?
>
> A:     This is – it – it – it– dealt with two things –
>
> Q:     Okay.
>
> A:     – an assault on his wife and an assault on Jeanette [Yung] –

¶24.   At that point, Burgess's attorney immediately objected to the testimony, and moved for a mistrial.  Arguments were presented outside the presence of the jury.  The trial court sustained the objection to the testimony, but denied Burgess's motion for a mistrial.  The trial court instructed the jury: "[T]he Defense had objected to certain testimony by Mr. Humphreys.  I have sustained that objection and I'm going to instruct you to disregard any response by Mr. Humphreys concerning any other allegation other than that we are here today on."  The jury affirmatively acknowledged that they understood the instruction.  The trial

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

court then individually questioned each juror whether he or she could disregard any statement about any other allegation. Every juror answered that he or she could.

¶25. "This Court will not reverse on the failure to grant a mistrial unless the trial court abused its discretion in overruling the motion for a mistrial." *Carpenter v. State*, 910 So. 2d 528, 534 (¶23) (Miss. 2005). "Where serious and irreparable damage has not resulted, the judge should admonish the jury then and there to disregard the impropriety." *Id.* "This Court on numerous occasions has held that where the trial judge sustains an appellant's objection to the testimony of a witness and instructs the jury to disregard the same, prejudicial error does not result from that testimony." *Ford v. State*, 147 So. 3d 325, 330 (¶11) (Miss. 2014) (citing *Snelson v. State*, 704 So. 2d 452, 456 (¶26) (Miss. 1997)).

¶26. Burgess argues that he was prejudiced by Investigator Humphreys's testimony mentioning a separate assault of his wife because it went to the heart of the matter of whether he assaulted Yung. Burgess also argues that the limiting instruction did not cure the prejudicial effect.

¶27. The trial court sustained Burgess's objection, and instructed the jury to disregard any statement made by Investigator Humphreys regarding any other allegation other than those at issue in the trial. "It is presumed, unless otherwise shown, that the jury followed the instruction given by the trial court." *Id.* at (¶12) (citing *Flora v. State*, 925 So. 2d 797, 805 (¶10) (Miss. 2006)).

¶28. Because the trial court is in the best position to assess prejudicial effect, we afford the trial court considerable discretion in ruling on a motion for a mistrial. *Id.* at (¶11) (citing

*Harrell v. State*, 947 So. 2d 309, 316 (Miss. 2007)). After reviewing the testimony, we find that any prejudicial effect of Investigator Humphreys's statement was cured by the trial court's admonition. *See Gossett v. State*, 660 So. 2d 1285, 1290-91 (Miss. 1995) (holding that the trial court's admonition of the prosecution witness's testimony regarding prior bad conduct cured any harm that may have been inflicted on the defendant's defense). Accordingly, the trial court did not abuse its discretion in denying Burgess's motion for a mistrial.

### III. Whether the trial court erred by not admitting Burgess's cell-phone records.

¶29. Burgess argues that the trial court erred by not admitting his cell-phone records. At trial, the prosecutor objected to the introduction of the cell-phone records. The trial court determined that the cell-phone records were not relevant, and sustained the prosecutor's objection. Burgess testified that he was in the subdivision looking for discarded items. He also testified that he made two phone calls to a friend telling him that he was in Castlewoods looking for discarded items. Burgess argues that the purpose of the cell-phone records was to verify that Burgess had actually made the calls, that he was not simply loitering in the subdivision, and that he had sent some text messages.

¶30. The standard of review applied to a trial court's decision to admit or exclude evidence is abuse of discretion. *Robinson Prop. Grp. L.P. v. Mitchell*, 7 So. 3d 240, 243 (¶9) (Miss. 2009). The relevancy and admissibility of evidence are well within the trial court's discretion, and reversal may be had only where that discretion has been abused. *Bingham v. State*, 723 So. 2d 1189, 1191 (¶9) (Miss. Ct. App. 1998).

¶31.    "'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. However, "[e]vidence which is not relevant is not admissible." M.R.E. 402. The cell-phone records did not have any tendency to make the existence of any fact that was of consequence to the determination of the action, which involved whether Burgess was guilty of attempted kidnapping and aggravated assault, more or less likely than it would have been without the evidence. Whether Burgess actually made the phone calls and sent some text messages before the attack was not relevant under Rule 401. The trial court did not abuse its discretion in excluding the cell-phone records.

**IV.    Whether the trial court erred by giving jury instruction S-3A.**

¶32.    Burgess argues that the trial court should have refused jury instruction S-3A, which was an "acquit first" lesser-included-offense instruction. Burgess contends that such an "acquit first" instruction has the effect of pressuring the jury to convict a defendant, resulting in a coerced verdict.

¶33.    "Whether to grant or deny proposed jury instructions is within the sole discretion of the [trial] court." *Victory v. State*, 83 So. 3d 370, 373 (¶12) (Miss. 2012) (citing *Newell v. State*, 49 So. 3d 66, 73 (¶20) (Miss. 2010)). As such, the giving or refusal of jury instructions is reviewed under an abuse-of-discretion standard. *Id.* We review the jury instructions as a whole to determine whether an error has occurred. *Id.*

¶34.    The portion of jury instruction S-3A that Burgess contends was improper provided:

"The Court instructs the Jury that if you unanimously find that the prosecution failed to prove all the elements of the crime of aggravated assault, you may then proceed in your deliberations to consider the lesser charge of simple assault." The Mississippi Supreme Court has held that an "acquit first" instruction, such as jury instruction S-3A, is not prohibited by Mississippi law. *Fulgham v. State*, 46 So. 3d 315, 329-30 (¶40) (Miss. 2010); *see also White v. State*, 149 So. 3d 556, 559 (¶10) (Miss. Ct. App. 2014). This argument is without merit.

### V. Whether Burgess's constitutional right to a fair and impartial jury was denied.

¶35. Burgess argues his constitutional right to a fair and impartial jury was denied. Specifically, Burgess argues that juror number 12 should have been stricken for cause because the juror stated that he would tend to believe law-enforcement officers, and had always known them to be factual. The trial court refused to strike juror 12 for cause. Burgess used his last peremptory challenge to strike juror 12. As a result, juror 12 did not actually sit on the jury.

¶36. Burgess argues that he and the prosecution were not treated equally because he had to use his last peremptory challenge to strike juror 12. However, "[t]he mere loss of a peremptory challenge is not enough to constitute a violation of the constitutional right to an impartial jury." *Johnson v. State*, 68 So. 3d 1239, 1246-47 (¶24) (Miss. 2011) (citing *Mettetal v. State*, 615 So. 2d 600, 603 (Miss. 1993)).

¶37. In *Christmas v. State*, 10 So. 3d 413, 423 (¶47) (Miss. 2009), the court held:

So long as the jury that sits is impartial, the fact that the defendant had to use

13

a peremptory challenge to achieve that result does not mean that the defendant was denied his constitutional rights. This Court has explained that a prerequisite to presentation of a claim of a denial of constitutional rights due to denial of a challenge for cause is a showing that the defendant had exhausted all of his peremptory challenges and that the incompetent juror was forced by the trial court's erroneous ruling to sit on the jury.

*Id.* (internal citations omitted).

¶38. Although Burgess exhausted his peremptory challenges, he fails to show that an incompetent juror was forced to sit on the jury due to an erroneous ruling by the trial court. Thus, this argument is without merit.

¶39. **THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, ATTEMPTED KIDNAPPING, AND SENTENCE OF TEN YEARS; AND COUNT II, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR.**