## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00559-COA

**OTIS SCOTT A/K/A OTIS CHARLES SCOTT**               **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                            **APPELLEE**

DATE OF JUDGMENT:                03/30/2023
TRIAL JUDGE:                          HON. M. JAMES CHANEY JR.
COURT FROM WHICH APPEALED:   WARREN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                                              BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                                              BY: ABBIE EASON KOONCE
DISTRICT ATTORNEY:               RICHARD EARL SMITH JR.
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                        AFFIRMED - 10/29/2024
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., LAWRENCE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     A man was accused of abusing his one-year-old twin children. Although charged with two counts, the jury ultimately convicted him of one count of child abuse. The trial court sentenced him as a habitual offender to life imprisonment without eligibility for parole.

¶2.     The man appeals his conviction and the denial of his motion for a new trial. He claims the trial court erred by allowing prejudicial evidence of a previous conviction to be admitted, the evidence was insufficient to support his conviction, and the verdict was against the overwhelming weight of the evidence. Finding no reversible error, we affirm.

### STATEMENT OF FACTS

¶3.     Adam and Bella Scott[1] are twins who were born prematurely in October 2019. Otis Scott is their father, and Carolyn is their mother.

¶4.     As a consequence of their premature birth, Adam and Bella completed a lengthy stay at the neonatal intensive care unit at the University of Mississippi Medical Center in Jackson. In the NICU, the twins received MRI scans, eye exams, and other tests to check for complications common in premature infants.  Bella was released from the hospital in good health in early December 2019.  Adam remained under hospital care, however, because doctors discovered evidence of a small stroke.  He was eventually discharged later that month, leaving the hospital in good health.

¶5.     Less than a month later, in January 2020, the twins were hospitalized for a respiratory virus.  After treatment, both children left the hospital in a healthy condition.

¶6.     Barely a month after that, in February 2020, Scott and Carolyn noticed that Adam was struggling to breathe and experiencing complications of some kind.  Scott testified that Adam was not responding to him and that he was not drinking from his bottle like normal.  They called the pediatric doctor and scheduled an appointment for Adam the next morning. According to Scott, they were told that if they believed Adam's condition was serious, they should take him to the hospital that night.

¶7.     Scott and Carolyn waited and took Adam to Merit River Region Hospital in Vicksburg the following morning.  Medical records show that when Adam arrived, he was experiencing lethargy, diarrhea, vomiting, and decreased appetite.  River Region doctors observed that

---

[1] Pseudonyms are used to protect the identity of the minor children.

Adam was having difficulty breathing and was hypothermic. Concerned that he may be suffering from COVID-19, the pediatric doctor transferred him to the emergency room.

¶8. Emergency room doctors observed that Adam was grunting when breathing, had low oxygen saturation, and was still hypothermic. Doctors also noted that Adam was suffering from seizure-like activity. They began treatment by securing his airway through intubation and ordering blood tests and X-rays. He also received a cursory check for obvious signs of trauma, and none were observed at that time. After a thorough examination, the emergency room doctors determined that Adam needed more care than River Region could provide. Unable to do more, they arranged for him to be taken to UMMC via a "pediatric critical care transport ambulance."

¶9. When Adam arrived at UMMC, he was "profoundly hypothermic." Doctors ordered a CT scan of Adam's head, which revealed extensive areas of "acute infarction" or low blood flow to the brain and subdural hematoma, otherwise known as a "brain bleed." Neurosurgeons who evaluated him came to believe there was a concern for "non-accidental trauma." Further examination revealed that Adam also had numerous retinal hemorrhages in his left eye. As a result, UMMC's pediatric team requested a non-accidental trauma examination of Adam.

¶10. Dr. Rosalyn Brownlee, a doctor in forensic medicine, examined Adam's medical records for signs of abuse. Dr. Brownlee would later testify that doctors found evidence Adam had suffered injuries to his neck and spine. Her testimony explained that Adam's symptoms were indicative of what she referred to as a non-accidental "hyperextension" or

3

"acceleration/deceleration" injury.

¶11.    Concerned that his twin sister Bella may have also been injured, Dr. Brownlee requested UMMC doctors to do a non-accidental trauma examination of her as well. Doctors drew a sample of her blood through an IV and conducted an orthopedic exam. The orthopedic exam revealed a "metaphyseal corner fracture" in her right leg.  Testimony later established Bella's parents blamed the staff "for fracture after IV insert."

¶12.    As a result of the totality of the medical findings, the children were placed in child protective custody.  Because the twins were placed in the State's custody, Dr. Brownlee was unable to speak to their parents during her examination.

## PROCEDURAL HISTORY

¶13.    In March 2021, a grand jury indicted Scott on two counts of felony child abuse—one count for Adam and one count for Bella.  The indictment also charged Scott as a habitual offender.

¶14.    Prior to trial, Scott's defense counsel made an ore tenus motion in limine to exclude evidence of two prior convictions.  The defense sought to exclude a sex-offense conviction from Louisiana that was over ten years old and a Mississippi conviction for "Failure to Register" from 2019.  At the pre-trial hearing, the State argued that Scott's prior conviction for "failing to register as a sex offender" was admissible because it was "completely unrelated" to the crime of child abuse and spoke to Scott's credibility as a witness. More specifically, the State alleged "he has a failure to register case" that was evidence he previously violated his obligation to provide truthful information to law enforcement.

4

¶15.   Ultimately, the trial court excluded Scott's Louisiana sex-offense conviction. But the court allowed "questioning of the defendant, cross-examination, concerning the 2019 conviction for failure to register as a sex offender" for impeachment purposes. However, the court noted it would give a limiting jury instruction that "would say, 'During the trial, you heard evidence of the defendant having been convicted of failure to register in the state of Mississippi as a sex offender. You may consider this evidence only for the limited purpose of attacking the defendant's credibility.'"

¶16.   Scott's defense counsel objected, questioning, "Is there any way to label it as a felony failure to register?"  The defense's paramount concern was that use of the words "sex offender" would "create some biasness towards [Scott] that has nothing to do with credibility."  The trial court responded, "[Y]ou don't have to go into why he was a sex offender . . . you do not need to get into the nature of the crime."  Ultimately, the trial court declined to completely prohibit the use of the phrase "sex offender."

¶17.   At trial, the State called Curtis Judge, an investigator with the Vicksburg Police Department, as a witness to testify about interviews he conducted with Scott and Carolyn.[2] Lieutenant Judge testified that Scott said he and Carolyn were the only people who watched Adam and Bella and that Scott's other children were not permitted to handle the twins.  The officer further testified that Scott told him they first noticed signs Adam was unwell the night before he was taken to River Region.  He said Scott stated Adam "has seizures all the time."  Lastly, the investigator testified that Scott insisted that he never saw Adam fall and that

_____

[2] Carolyn was designated as witness by the prosecution but "failed to appear" at trial. Both parties stipulated to allowing a taped interview of her into evidence.

5

Adam had not been involved in any other accident.

¶18. The State then called Dr. William Johnston, an emergency department physician at River Region. Dr. Johnston testified about Adam's symptoms and treatment before his transfer to UMMC. He stated that he was primarily concerned with Adam's challenges in breathing and hypothermia when the child was initially brought into the hospital. As such, Dr. Johnston testified his focus was on providing medical care, but he did a quick check for trauma and did not see "obvious signs of trauma of a child struggling to breathe." On redirect, Dr. Johnston stated that he was not asked to determine if trauma caused Adam's injuries and that he was "more interested in just making sure the baby kept breathing." After securing Adam's airway, Dr. Johnston organized his transfer to UMMC.

¶19. Lastly, the State called Dr. Brownlee to testify about the care of both Adam and Bella while at UMMC. Dr. Brownlee stated that Adam had suffered injuries to his head, neck, spine, and eye. She also provided her conclusions as to the cause of Adam's injuries. Dr. Brownlee explained that there were three potential causes for Adam's injuries: birth trauma, accidental injury, or non-accidental abuse. She said that she ruled out birth trauma because none of Adam's prior examinations from his initial stay in the NICU showed signs of birth trauma. Dr. Brownlee said she was also able to rule out accidental injury because there had not been any reports of accidental injury in Adam's medical records. She testified that after examining Adam, she ultimately concluded that the cause of his injuries was abuse.

¶20. Dr. Brownlee then became concerned that Bella may also have been abused, so she ordered an examination of Adam's sister as well. She explained that upon examination,

doctors discovered an injury to Bella's right leg and diagnosed her with a metaphyseal corner fracture in the right leg. Dr. Brownlee testified that this injury was "one of the fractures in childhood that has the highest specificity for abuse."

¶21. After the State rested its case-in-chief, the defense called Scott to the stand. Scott testified that at the time of Adam's injuries, he, Carolyn, Adam, Bella, and two of their other children were all living together in a motel. Scott stated he and Carolyn "barely held [Adam]" because of his condition. He explained that while Carolyn was away at work, he was Adam and Bella's sole caregiver but insisted that he "would never hurt my kids any type of way." Scott told the jury that when he noticed Adam "was having complications[,]" he called Carolyn, and she came home. According to Scott's own testimony, Adam had not been involved in any accident. While on the witness stand, the jury was informed of Scott's prior conviction in Mississippi. Defense counsel specifically asked him, "In 2019, you were convicted of failing to register as a sex offender; is that correct?" Scott admitted to the conviction without going into further detail. This was the first time the jury was informed of his prior conviction. The actual underlying sex-offense conviction was not discussed or brought up in front of the jury.

¶22. The defense did not call any other witnesses. After deliberation, the jury returned a verdict finding Scott guilty of the count of felonious child abuse as to Adam. However, the jury found Scott not guilty of the count of child abuse as to Bella.

¶23. Scott moved for judgment notwithstanding the verdict or, in the alternative, a new trial. He argued that admitting evidence of his prior felony conviction for failing to register

as a sex offender was error. The trial court denied his motion. The court sentenced Scott as a habitual offender and ordered him to serve the maximum term of life in the custody of the Mississippi Department of Corrections without eligibility for parole. Scott appeals his conviction and the denial of his post-trial motion.

## DISCUSSION

¶24. Scott raises a series of arguments on appeal. First, whether the trial court committed reversible error by allowing the parties to question Scott about his prior conviction for "failure to register as a sex offender," and in turn, whether this admission was overly prejudicial to him. Next, he argues his child abuse conviction was not supported by sufficient evidence. Lastly, he contends the jury's verdict was against the weight of the evidence.

¶25. We find it was harmless error to admit Scott's prior conviction into evidence, sufficient evidence supported his conviction of child abuse, and the verdict was not against the overwhelming weight of the evidence.

### I. The admission of Scott's prior conviction for failure to register was not reversible error.

¶26. We first examine whether the trial court incorrectly applied the factors that determine whether a prior conviction is admissible into evidence.

¶27. Mississippi Rule of Evidence 609(a) controls whether a witness's credibility may be attacked with evidence of a prior criminal conviction. The introduction of "crimes punishable by death or imprisonment in excess of one year are allowed for impeachment, provided the court determines that the probative value of the evidence outweighs its prejudicial effect on a party." *White v. State*, 785 So. 2d 1059, 1061 (¶6) (Miss. 2001). "A trial court's decision

to admit a prior conviction for impeachment is reviewed under an abuse-of-discretion standard." *Burgess v. State*, 210 So. 3d 569, 574 (¶14) (Miss. Ct. App. 2016).

¶28. "The trial judge must make an on the record determination that the probative value of the evidence outweighs its prejudicial effect and he should articulate his reasons for this finding." *Jordan v. State*, 592 So. 2d 522, 523 (Miss. 1991). Rule 609(a)(1)(B) provides that for impeachment purposes, evidence of the conviction "must be admitted in a criminal case in which the witness is a [defendant], if the probative value of the evidence outweighs its prejudicial effect to that defendant."

¶29. The Supreme Court has outlined five factors to be considered:

(1)   the impeachment value of the prior crime;
(2)   the point in time of the conviction and the witness's subsequent history;
(3)   the similarity between the past crime and the charged crime;
(4)   the importance of the defendant's testimony; and
(5)   the centrality of the credibility issue.

*Peterson v. State*, 518 So. 2d 632, 636 (Miss. 1987). We address each factor in turn.

*Impeachment Value*

¶30. First, we examine the trial court's analysis of the impeachment value of Scott's prior conviction for failing to register. Scott argues that his conviction for failing to register had no impeachment value because it had no bearing on his credibility or propensity for truthfulness. He contends that "failing to register" is a strict liability crime that does not require felonious intent and, therefore, cannot be a crime involving dishonesty or credibility. *See also* MRE 609(a)(2).

¶31. Prior convictions that speak to a defendant's propensity for truthfulness have

9

impeachment value. For example, while grand larceny and burglary were not "within the categor[ies] of a crime involving dishonesty or false statements," the Supreme Court has found they could be admitted in a capital rape trial by utilizing the *Peterson* factors. *Adams v. State*, 772 So. 2d 1010, 1022 (¶58) (Miss. 2000).

¶32. Scott argued at trial that his prior conviction for failing to register had little impeachment value because "there are a myriad of ways a person could violate the failure to register statute."

¶33. Scott was previously convicted of failing to provide law enforcement with his current address as a person with a "registrable offense." As a convicted sex offender from Louisiana, Scott had a statutorily required duty to register and inform Mississippi authorities of his address and any changes of address. *See generally* Miss. Code Ann. § 45-33-25(1)(a) (Rev. 2023) ("Any person having a permanent or temporary residence in this state . . . who has been convicted of a registrable offense in this state or another jurisdiction . . . shall register with the responsible agency and the Mississippi Department of Public Safety"). Among other reasons, the Legislature has required registration because "[i]t will allow law enforcement agencies to alert the public when necessary for the continued protection of the community." Miss. Code Ann. § 45-33-21 (Rev. 2023). And registration is key because there is a "danger of recidivism posed by criminal sex offenders," so a corresponding need for "the protection of the public from these offenders is of paramount concern and interest to government." *Id*.

¶34. We conclude Scott's failure to abide by a law intended to safeguard the public from

harm had impeachment value. By failing to register his new address, Scott left the authorities under the impression that he remained at his former address. Accordingly, the conviction goes to his truthfulness, which weighs in favor of admissibility.

*Timing of the Prior Conviction*

¶35. In *Peterson*, the defendant's prior conviction occurred less than a year before the crime at issue during trial, and the court found this "freshness" weighed in favor of admissibility. *Peterson*, 518 So. 2d at 637; *see also Myers v. State*, 153 So. 3d 581, 588 (¶¶25-26) (Miss. 2014) (finding that a trial court did not abuse its discretion when it allowed the State to ask questions during a 2012 trial about the defendant's prior felony conviction from 2007).

¶36. Scott's failure-to-register conviction was from 2019, and the alleged abuse was in February 2020. The eight-month period indicates this prior conviction was recent and weighs in favor admissibility.

*Similarity Between the Crimes*

¶37. The prior conviction's "likeness" to the present charge is a factor because a "jury is very likely to infer present guilt from [the] past conviction for a similar offense." *Peterson*, 518 So. 2d at 637 (citing *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967)). Where two crimes are alike, the probative value of admitting the evidence of the prior conviction is generally outweighed by its prejudicial effect on the defendant. *Id.*

¶38. As a matter of law, the crimes of failure to register and felony child abuse are dissimilar. While sexual offense crimes may include those involving children, the failure to

11

register is not necessarily on its face a crime against a child. This is true here, especially where Scott's failure to register was a failure to inform the proper authorities of an address change. Therefore, this weighs in favor of admissibility.

*Importance of Testimony and Credibility*

¶39. The next two *Peterson* factors to assess are the importance of Scott's testimony and whether his credibility was central to his defense. "[A] defendant's testimony is significant when he is one of the only witnesses who would establish his defense." *Ross v. State*, 308 So. 3d 885, 890 (¶18) (Miss. Ct. App. 2020). Notably, "[R]ule 609(a)(1) aids in the search for truth by insuring that important testimony from the defendant will not be excluded because he fears the prejudicial effect his previous conviction might have on the jury." *Peterson*, 518 So. 2d at 637. As such, "[w]hen a defendant's testimony stands or falls based on his credibility, the evidence which bears on his credibility is important." *Ross*, 308 So. 3d at 890 (¶18); *accord* MRE 609(a)(2).

¶40. Scott was the only witness to testify for the defense. His testimony was the only source of evidence supporting his arguments that he did not abuse Adam and did not know of any accidents that caused his injuries. Scott was the only person the jury heard from regarding the caregiving responsibilities for the twins, the family's home life, and the details of the days leading up to the hospital's discovery of Adam's significant injuries. Because Scott was the only defense witness, his testimony was of the utmost importance to his defense and weighs against the admissibility of the conviction.

¶41. Generally speaking, all but one of the *Peterson* factors weigh in favor of admitting

12

Scott's prior conviction. On these facts, it was not error to find that the *Peterson* factors weighed in favor of admitting Scott's similar failure to register conviction.

*The Probative Value of Scott's Prior Conviction*

¶42.    After "conclud[ing] that the factors overall weigh[] in favor of admissibility," the court must ultimately conduct a balancing test to "determine[] that the probative value of admitting evidence of the . . . prior felony convictions outweighed any prejudicial effect." *Burgess*, 210 So. 3d at 575 (¶19).  "The balancing test under this rule is much more difficult than the traditional balancing test under Rule 403." *Sea v. State*, 49 So. 3d 614, 618 (¶16) (Miss. 2010).

¶43.    The State sought to introduce Scott's "conviction for failure to register as a sex offender."  Reasoning that because there "is a statutory requirement to provide truthful, proper information to law enforcement on a regular basis, and he didn't do that," the State argued that Scott's "failure to register . . . is a credibility issue."  The State explained to the trial court that Scott "provided an address on Mount Alban Road, and when law enforcement . . . went to inspect the home, the home was grown up. No one had been living there."  And Scott "never notified law enforcement of his new address."

¶44.    In opposition, Scott's counsel argued, "All the conviction says is failure to register. There are eight million reasons why people fail to register that have nothing to do with credibility."  Counsel further stated, "[I]t's extremely prejudicial for him to have those convictions come out in evidence."

¶45.    In its *Peterson* analysis, the court noted that "the failure to register as a sex offender

13

or to give a correct address is not related at all to the physical abuse of the children" and presents "no sexual implications." Agreeing in part with the State's argument, the trial court found "that the truthfulness of the residence" does have "some bearing on the credibility." Accordingly, the trial court decided "to allow questioning of the defendant . . . concerning the 2019 conviction for failure to register."

¶46. But in accord with Rule 609, the trial court proceeded on its own to propose a cautionary jury instruction that "would say, [d]uring the trial, you heard evidence of the defendant having been convicted of failure to register in the State of Mississippi as a sex offender."[3] The trial court's proposed instruction allowed for the jury to "consider this evidence only for the limited purpose of attacking the defendant's credibility." When counsel for Scott asked the court if it was possible to refrain from using the phrase "sex offender," the trial court declined.

¶47. Upon a review of the record, the evidence of Scott's 2019 conviction is the sentencing order, which clearly identifies his conviction only as a "failure to register." The sentencing order explicitly states Scott "entered a plea of guilty to the lesser-included offense of: FAILURE TO REGISTER." And the statute it cites is titled "Address, status, employment, name change, vehicle, internet, or other information." Miss. Code Ann. § 45-33-29(1) (Rev. 2023). The statute further provides, "Upon any change of address, including temporary lodging, an offender required to register under this chapter is required to personally appear

---

[3] The trial court continued its proposed cautionary instruction stating, "You may consider this evidence only for the limited purpose of attacking the defendant's credibility. You cannot and must not simply infer that the defendant is, therefore, guilty of the charges for which he is presently on trial."

14

. . . before he intends to first reside at the new address." *Id.*

¶48.    In one case where we examined the proper application of *Peterson*, the State sought to introduce evidence of the defendant's three prior felony convictions for sexual battery during a trial for attempted kidnapping and aggravated assault. *Burgess*, 210 So. 3d at 575 (¶18). The court allowed the prior convictions into evidence, but because of the prejudice associated with sex crimes, the court prohibited mentioning that the three prior convictions were for sexual battery. *Id.* at (¶19). Regarding the redacted offenses, we found that the "trial court did not abuse its discretion in admitting Burgess's three prior felony convictions under Rule 609(a)(1)." *Id.*

¶49.    Allowing the jury to hear that Scott had a prior conviction for "failure to register as a sex offender" could have created a prejudicial bias against him that had no bearing on his credibility. The 2019 conviction was for failure to register a change of address. Informing the jury that Scott's prior conviction was for a crime of a sexual nature had the potential to mislead the jury. Scott urged the trial court to prohibit the use of the phrase—just as was done in *Burgess*—thereby avoiding the prejudicial effect associated with introducing the details of this type of conviction. Like in *Burgess,* the existence of Scott's prior conviction for failing to register could have been presented to the jury without disclosing his status as a sex offender.

¶50.    But "[t]o warrant reversal, two elements must be shown: error, and injury to the party appealing." *Gray v. State*, 799 So. 2d 53, 61 (¶30) (Miss. 2001). We reverse a trial court's erroneous decision to admit evidence of a prior conviction "if it is found that a substantial

right of the defendant is adversely affected by the improperly admitted or excluded evidence." *Jenkins v. State*, 102 So. 3d 273, 278 (¶16) (Miss. Ct. App. 2011) (internal quotation marks omitted) (citing *Young v. State*, 981 So. 2d 308, 313 (¶17) (Miss. Ct. App. 2007)). Conversely, error is considered harmless and not grounds for reversal when "it is apparent on the face of the record that a fair minded jury could have arrived at no verdict other than that of guilty." *Young*, 981 So. 2d at 313 (¶17).

¶51. The record does not support a finding that the trial court's error affected the final result of this case. "[T]he weight of the evidence against [the defendant], excluding his prior convictions, was substantial and proved beyond a reasonable doubt that [the defendant] committed the crime." *Triplett v. State*, 881 So. 2d 303, 307 (¶16) (Miss. Ct. App. 2004). The totality of the evidence from medical records, doctor testimony, and interviews with investigators was substantial and makes apparent beyond a reasonable doubt Scott committed the crime.

¶52. Furthermore, the split verdict the jury returned informs our decision. While Scott was convicted of felony child abuse as to Adam, the jury acquitted him of child abuse as to Bella. This shows the introduction of the phrase "sex offender" did not inflame the jury to an extent that adversely affected Scott's substantial right to a fair trial.

¶53. In this case, because of the substantial evidence against him, we cannot find reversible error. *See Gray*, 799 So. 2d at 61 (¶30).[4]

---

[4] To some extent, Scott argues the trial court committed error by not addressing the overriding-prejudice-versus-probative component of the *Peterson* factors. However, the record shows the trial court did address Rule 609's requisite factors when it considered Scott's ore tenus motion in limine to exclude his prior convictions. While the trial court did

## II. Scott's conviction was supported by sufficient evidence.

¶54. Scott's second claim on appeal is that the evidence was insufficient to support the conviction of felony child abuse against Adam. Scott essentially contends that no reasonable juror could have found him guilty beyond a reasonable doubt because Dr. Brownlee's diagnosis of abuse was based on suspicion.

¶55. "Sufficiency-of-the-evidence claims are reviewed de novo." *Kirby v. State*, 379 So. 3d 915, 927 (¶33) (Miss. Ct. App. 2024) (quoting *Moffett v. State*, 354 So. 3d 929, 943 (¶43) (Miss. Ct. App. 2022)). "When reviewing a challenge for sufficiency of the evidence, this Court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Naylor v. State*, 248 So. 3d 796 (¶8) (Miss. 2018) (internal quotation marks omitted) (quoting *Ambrose v. State*, 133 So. 3d 786, 791 (¶16) (Miss. 2013)). Notably, the issue is not "whether we think the State proved the elements." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010). The issue is "whether a reasonable juror could rationally say that the State did." *Id.*

¶56. Scott was indicted pursuant to state law that prohibits the physical abuse of children. Miss. Code Ann. § 97-5-39(2) (Rev. 2020). The jury was instructed under the subsection that states it is felonious child abuse "[i]f serious bodily harm to any child actually occurs, and

---

not state verbatim that the probative nature of Scott's prior conviction of failure to register outweighed any prejudice he might suffer from its admission, the trial court's ruling found the prior conviction admissible. Because the factors were addressed and the evidence was ultimately deemed admissible, we find the trial court necessarily determined that the probative value of the prior conviction outweighed any prejudice Scott might suffer.

if the person shall intentionally, knowingly or recklessly . . . Strike any child on the face or head," "Disfigure or scar any child," or "Whip, strike or otherwise abuse any child[.]" Miss. Code Ann. § 97-5-39(2)(c).

¶57. On appeal, Scott argues the jury could not conclude he abused Adam because "Dr. Brownlee never gave a definitive opinion." In his appointed counsel's view, the physician "was less than conclusive," so his "conviction is based on speculation of likelihood and medical 'concern,' not on evidence beyond a reasonable doubt."

¶58. In response, the State argues that certainty of how a child was injured is not the standard. Our Supreme Court has recently held that "we do not suggest that evidence of how an injury occurred is always necessary to prove felony child abuse." *Hampton v. State*, 309 So. 3d 1055, 1066 (¶62) (Miss. 2021). Indeed, in one case from our Court, we found that the evidence was sufficient to support the conviction even though it was unclear how exactly a child had been injured; the only certainty was that she had been burned, although by what method was unknown. *Harris v. State*, 123 So. 3d 925, 935 (¶35) (Miss. Ct. App. 2013). In that case, it was enough that a doctor from UMMC "found Sue's burns consistent with child abuse," since the burns to the child were unlike common injuries and "were on both hands and . . . were not on her dominant fingers." *Id*. at 935-36 (¶35).

¶59. The proof in this case far exceeds those cases. Dr. Brownlee testified her "specialty is regarding injuries of a child and . . . whether or not they may be a victim or abuse or neglect." She related how the neurosurgeons who were caring for Adam were concerned he was suffering from abuse. In her view, the particular subdural hematoma (or area of clotted

blood) from which the child suffered was "unique," as it was "created by trauma." The doctor ruled out that Adam might be suffering from birth trauma or accidental trauma, including a short fall. She contrasted Adam's injuries from these more commonplace traumas, agreeing with questioning that Adam's injuries were "significant."

¶60. Through extensive testimony, Dr. Brownlee walked the jury through her analysis of an MRI of the child. She described her finding that Adam's scan revealed he had a hemorrhage in his brain, which could show "the full scope of the hematoma." The doctor then testified that "inflicted injury or abuse is the most likely" cause of the injuries Adam had suffered.

¶61. But this was not the only injury the child suffered. Dr. Brownlee further testified that she was able to eliminate accidental injury as a cause for Adam's injuries because no accidental injury could explain the sheer multitude of harm. Medical records from February 2020 show that when Adam was brought to the hospital, he was in respiratory distress, showed signs of abnormal seizure-like activity, and had a hypoxic brain injury, a subdural hematoma, extensive infarction, elevated liver enzymes, and retinal hemorrhages in his left eye.

¶62. In the end, the jury heard from Dr. Brownlee that when Adam and his sister left the NICU after birth, "[t]hey were healthy babies," but then Adam later had such a multitude of harm that "no accidental injury" could explain it. On redirect, she was asked, "[W]hen you put all of [the injuries] together, that is how you come up with abuse?" The doctor answered, "Yes." Adam "was a normal baby," she concluded, "[a]nd now he's neurologically

19

devastated, and he had just as much potential as his sister, who's not."

¶63.  And after the doctor described the multitude of injuries Adam suffered, Scott testified that he and Carolyn were the only people who watched Adam and Bella.  Critically, the jury heard Scott was the sole caretaker of the children while Carolyn was at work.  Indeed, Scott called her when he noticed Adam was sick because she was not home. Finally, Scott was adamant on the stand that Adam had not been involved in an accident like a fall, car wreck, or drop.

¶64.  Our precedent is clear that "[a]ll the proof need not be direct and the jury may draw any reasonable inferences from all the evidence in the case."  *Anthony v. State*, 23 So. 3d 611, 623 (¶53) (Miss. Ct. App. 2009).  In fact, "a conviction may be had on circumstantial evidence alone."  *Id.*  As the State correctly argued in its brief, "Dr. Brownlee was unwavering in her testimony" that Adam had been the victim of serious physical abuse. After reviewing the record, we find that sufficient evidence was presented for a reasonable jury to conclude that the State proved the elements for felony child abuse beyond a reasonable doubt.

### III.   The verdict was not against the overwhelming weight of the evidence.

¶65.  Scott's final argument on appeal is a claim that the verdict finding him guilty of child abuse against Adam was against the weight of the evidence.

¶66.  This court "view[s] the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it stand would sanction an unconscionable injustice." *Little v. State*, 233 So. 3d 288,

20

289 (¶1) (Miss. 2017).

¶67. First, Scott alleged that Dr. Brownlee's findings were based on an incomplete analysis of the facts because she did not interview the other children living in the home and did not view the recorded police interview with Scott and Carolyn. Scott asserts that her analysis based on this incomplete information produced an unreliable opinion from which the jury could not conclude Scott abused Adam. Second, he contends that by failing to give a definitive opinion on the exact cause of Adam's injuries, the State failed to establish a timeline for the infliction of Adam's abuse and the subsequent development of his symptoms. According to Scott, as a result, the jury was left to speculate that Adam's injuries occurred during a time when Scott was his sole caretaker. Third, he argues that the lack of bruising on Adam makes Dr. Brownlee's finding that Adam's injuries were caused by non-accidental trauma implausible.

¶68. The essence of Scott's argument hinges on the jury's interpretation of conflicting facts. But "[t]hose decisions belong *solely* to the jury." *Little*, 233 So. 3d at 289 (¶1) (emphasis added). "The jury is charged with the responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed." *Wallace v. State*, 139 So. 3d 75, 78 (¶8) (Miss. Ct. App. 2013). The law is well settled that "[w]e do not reweigh evidence," "assess the witnesses credibility," or "resolve conflicts between evidence." *Little*, 233 So. 3d at 289 (¶1).

¶69. Dr. Brownlee based her analysis on the extensive medical records documenting Adam's conditions from his premature birth in 2019 to his hospitalization in February 2020.

21

These records indicated that Adam's condition was reported as "normal" during his last visit immediately preceeding his hospitalization in February 2020. Dr. Brownlee testified that the possible causes for Adam's injuries were birth trauma, accidental injury, and non-accidental trauma. She stated that her review of the case eliminated birth trauma and accidental injury as potential causes. Dr. Brownlee testified that Adam could not have suffered birth trauma because he was born via a Cesarean section; likewise, neither parent ever reported Adam being harmed in an accident. According to Dr. Brownlee, children who are victims of abuse may receive injuries without presenting bruising or other visible marks on their skin.

¶70. Viewed in the light most favorable to the verdict, the evidence presented against Scott does not weigh so heavily against the verdict that to allow it to stand would sanction an unconscionable result. Therefore, we find that Scott's conviction was not against the overwhelming weight of the evidence.

## CONCLUSION

¶71. We find the admission of Scott's prior conviction for failure to register was not reversible error under the *Peterson* factors. Although informing the jury of his conviction by using the phrase "sex offender" was unnecessarily prejudicial, it was harmless error. Additionally, the evidence from the medical records, physician testimony, and a law enforcement officer was sufficient to support his conviction, and the verdict was not against the overwhelming weight of the evidence. Therefore, we affirm Scott's conviction and sentence for felony child abuse.

¶72. **AFFIRMED.**

22

**BARNES, C.J., CARLTON, P.J., AND EMFINGER, J., CONCUR. WILSON, P.J., AND SMITH, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, McDONALD AND LAWRENCE, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. WEDDLE, J., NOT PARTICIPATING.**